636 So.2d 645 (1994)
Charles T. ROGERS,
v.
Ned HOLDER.
No. 92-CA-57.
Supreme Court of Mississippi.
February 3, 1994.
Rehearing Denied May 26, 1994.
*646 Thomas J. Lowe, Jr., Jackson, for appellant.
Lindsey C. Meador, Meador & Crump, Cleveland, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and PITTMAN, JJ.
SULLIVAN, Justice, for the Court:
Charles T. Rogers won the October, 1991, election for sheriff of Sunflower County. Ned Holder, the incumbent, contested the election, claiming fraud on the part of Rogers' supporters. A Special Tribunal ordered a special election and found that the will of the voters could not be ascertained due to radical departures from the mandatory provisions of the election code. Rogers appeals and presents the following issues:
1. Whether the election tribunal erred in finding a special election was warranted;
2. Whether an election tribunal can invalidate all absentee ballots from a precinct without first finding voter fraud as to each absentee ballot;
*647 3. Whether the election tribunal erred in not voiding the two precincts' poll votes, in addition to their absentee ballot votes, upon a showing of voting irregularities; and
4. Whether invalid ballots amounting to far less than 1% of the total votes cast justify calling a new election.
Assignment No. 1 subsumes all other assignments on appeal and will be the only issue discussed in this opinion.

DID THE ELECTION TRIBUNAL ERR IN FINDING A SPECIAL ELECTION WAS WARRANTED?
When an election contest is successful, an alternatively-pronged test is employed to determine whether a special election is required. Stringer v. Lucas, 608 So.2d 1351, 1357 (Miss. 1992), citing Noxubee County Democratic Executive Committee v. Russell, 443 So.2d 1191 (Miss. 1983). If either (1) enough illegal votes were cast for the contestee to change the election result or (2) the amount of votes disqualified is substantial enough that it is impossible to discern the will of the voters, a special election is required. Stringer, 608 So.2d at 1357. Otherwise, only the tainted votes are rendered void and the outcome of the election is determined by the legal votes cast. Rizzo v. Bizzell, 530 So.2d 121, 128 (Miss. 1988). Determination of the intent of the voters of contested ballots is a factual inquiry properly made by the Special Tribunal. Wade v. Williams, 517 So.2d 573, 576 (Miss. 1987).
Rogers contends the tribunal erred when it found the will of the voters was impossible to ascertain and a special election warranted based on the different outcome of the election when absentee ballots from two precincts are thrown out and only the remaining ballots from the same two precincts are counted. According to Rogers, the record is devoid of any evidence of voter fraud. Holder claims Rogers is precluded from this assertion on appeal by virtue of Miss. Code Ann. § 23-15-933 (Supp. 1992), as all commissioners concurred in the Tribunal's findings. However, § 23-15-933 (Supp. 1992) only prevents review of the Tribunal's findings of fact in this case; its conclusions of law are reviewable by this Court.
Holder's election contest was successful, therefore the alternatively-pronged Russell test comes into play. We must first discern whether any votes cast for Rogers were illegal. The Special Tribunal found as a fact that no allegations had been made regarding improper voting at the polls of Sunflower and Moorhead precincts; consequently, we are concerned with only the absentee ballots from these precincts.

A. Illegality of Votes
In determining which votes are illegal or invalid, the general rule is that a violation of voting procedure which is "such a total departure from the fundamental provisions of the statute as to destroy the integrity of the election and make the will of the qualified electors impossible to ascertain" renders the tainted votes void. Stringer, 608 So.2d at 1361, quoting Riley v. Clayton, 441 So.2d 1322, 1328 (Miss. 1983). We require strict compliance with the statutes concerning absentee ballots. Stringer, 608 So.2d at 1361. Nonetheless, absent evidence of fraud or some intentional wrong, technical irregularities will not invalidate an election. Wilbourn v. Hobson, 608 So.2d 1187, 1192 (Miss. 1992).
While we have stated, "[A]ll statutes limiting the voter in the exercise of his right of suffrage are construed liberally in his favor, in order to ascertain the will of the majority of the voters," Wilbourn, 608 So.2d at 1193, this liberal construction does not refer to situations in which there were allegations of fraud or intentional wrongdoing, but only to situations where the irregularities were caused by mistakes of voters and/or election officials. Wilbourn, 608 So.2d at 1193. The burden to prove fraud in conjunction with the votes at issue rests with the party seeking to invalidate the ballots. Wilbourn, 608 So.2d at 1193; Miss. Code Ann. § 23-15-931 (1972).

1. Was There a Total Departure from the Fundamental Provisions of the Absentee Balloting Procedures Law?
If a statute does not expressly declare that a particular act is essential to *648 the election's validity or that omission of the particular act will render the election void, the statute is considered directory rather than mandatory, so long as the irregular act is not intended to affect the integrity of the election. Riley v. Clayton, 441 So.2d 1322, 1326 (Miss. 1983). If the violated statute is directory rather than mandatory and there is no allegation or proof of fraud, the non-complying ballots are valid and properly counted. Riley, 441 So.2d at 1328. Votes not in compliance with mandatory provisions of election statutes are illegal. Votes illegally cast are improperly counted. Hatcher v. Fleeman, 617 So.2d 634, 640-41 (Miss. 1993).
Rogers contends the statutes involved are directory, but admits that the irregularities found by the Special Tribunal "might be sufficient to invalidate specific ballots." The Special Tribunal made the following corresponding findings of fact and conclusions of law:

 Fact Law
 Absentee ballots came to voters Violation of §§ 23-15-717
 who had not requested them XX-XX-XXX
 XX-XX-XXX
 Voters did not vote their Violation of §§ 23-15-719
 own absentee ballots; XX-XX-XXX
 attesting witnesses did
 not witness the votes
 being made; voters
 signed electors'
 certificates without
 having punched the
 ballots themselves;
 absentee ballots were
 not placed in the
 envelope, closed, and
 sealed by the voters

While we may not review the facts found by the Special Tribunal in this case, we may question whether the facts as found by the Special Tribunal support its conclusions of law.
Mississippi Code Annotated § 23-15-717 (1972) provides that an elector "applying for an absentee ballot shall fill in the application form as provided in § 23-15-627." Section 23-15-627 (1972) sets forth the form of the application for an absentee ballot which shall be furnished, by the registrar, to any elector authorized to receive an absentee ballot. Section 23-15-715 (1972) requires electors desiring absentee ballots to appear personally before the county registrar and execute and file an application as provided in § 23-15-627 within a certain time period before the election; if the elector is unable to appear personally for the specific reasons set forth in the statute (disability, temporarily residing out of the county, etc.), he or the parent, spouse, or dependent who will be with the voter on election day, may mail the appropriate application to the registrar. It seems the receipt of absentee ballots by sixteen (16) registered voters, five (5) of whom either did not vote or did not vote absentee, who had neither completed an application form nor requested, in any manner, an absentee ballot, does indeed work a violation of §§ 23-15-717, 23-15-627, and 23-15-715. It follows that the Special Tribunal's legal conclusion, that these statutes had been violated, is correct.
*649 Mississippi Code Annotated § 23-15-719 (1972) requires that the elector fill in his absentee ballot, place it in the provided envelope and seal the envelope, then subscribe and swear to an affidavit printed on the back of the envelope which states "this envelope contains the ballot marked by me." The Special Tribunal's findings of fact support its conclusion that this statute was violated by eight (8) voters, all but one of whose ballots were previously noted in violation of §§ 23-15-717, 23-15-627, and 23-15-715 (1972). Section 23-15-635 (1972) provides the form for the certificate of attesting witness to be used in conjunction with absentee ballots when the county registrar is not an attesting witness to the vote. The certificate states that the witness watched the voter mark his ballot, the voter "was not solicited or advised by me" concerning his vote, the voter placed his absentee ballot in the envelope, closed and sealed it, and signed and swore or affirmed the appropriate affidavit. Miss. Code Ann. § 23-15-635 (1972). Again, the Special Tribunal's findings of fact support the conclusion that this statute was violated by two (2) voters, whose ballots were also in violation of one or more of the previously mentioned statutes.
While no cases have been found addressing whether the provisions of §§ 23-15-717, 23-15-627, 23-15-715, or XX-XX-XXX are directory or mandatory, we have held that § 23-9-413, the predecessor to § 23-15-635 (1972), is mandatory. Shannon v. Henson, 499 So.2d 758, 766 (Miss. 1986); Fouche v. Ragland, 424 So.2d 559, 561 (Miss. 1982). The signature of an attesting witness was found mandatory in part because § 23-9-419 (Supp. 1981) provided that an absentee ballot be rejected if there was a defect in the execution of the outside of the envelope containing an absentee ballot. Fouche, 424 So.2d at 562. More importantly, the provision was found mandatory because the certificate signed by the witness was intended by the Legislature to ensure the integrity of absentee ballots. Fouche, 424 So.2d at 561. The certificate to be signed by an attesting witness pursuant to § 23-15-635 (1972) likewise certifies
that the voter executed [his] affidavit, certifies the voter first exhibited a blank ballot which was not marked or voted before it was exhibited to the witness, and that the voter then retired out of the witness' presence but within his sight so that he could see that he voted but not how he voted, that no one was present as he marked his ballot, that the voter was not solicited or advised in voting, and, finally, that after marking his ballot in secret, the voter placed it in the envelope, closed and sealed the envelope in the certifying officer's presence, and then signed and made affidavit to the first certificate.
Therefore the provisions of § 23-15-635 (1972) are also mandatory because intended to ensure the integrity of absentee ballots. Fouche, 424 So.2d at 561.
Absentee paper ballots, unlike machine votes, are particularly amenable to fraud; the detailed procedures outlined in the statutes at issue here are designed to protect against fraudulent votes and ensure that absentee ballots actually reflect the will of the voters who cast them. It appears that the Special Tribunal was correct in concluding §§ 23-15-717, 23-15-627, 23-15-715, 23-15-719, and 23-15-635 are mandatory in nature.
The strict compliance with statutes concerning absentee ballots, as required by this Court, is lacking in this case. Stringer, 608 So.2d at 1361. Even if these statutes are found directory in nature, the non-complying ballots are not properly counted because of the allegations and proof of fraud. Riley, 441 So.2d at 1328. The violations of these provisions were not mere technical irregularities caused by mistakes of the voters and/or election officials. Instead, these violations are shadowed by allegations and a reasonable inference of fraud; in other words, at least a "hint of unseemliness." Wilbourn, 608 So.2d at 1193. Although Holder did not meet his burden of proving fraud by a reasonable certainty, the violations of mandatory provisions of the Absentee Balloting Procedures Law are "such a total departure from the fundamental provisions of the statute[s] as to destroy the integrity of the election and make the will of [certain] qualified electors impossible to ascertain." Stringer, 608 *650 So.2d at 1361, quoting Riley, 441 So.2d at 1328. It follows that votes not in compliance with these statutes are illegal. Hatcher, 617 So.2d at 640-41.

2. Would the Election Outcome Have Been Different?
There were thirty-five (35) absentee ballots voted in the Moorhead precinct, thirteen (13) of which were for Holder and twenty-two (22) for Rogers. Only two voters from the Moorhead precinct testified and only one of these votes was not in strict compliance with the statutes.
There were fifty (50) absentee ballots voted in the Sunflower precinct, only one of which was for Holder. Regarding these voters who testified at trial, the Special Tribunal found that "at least six of the absentee voters testified they asked that the person marking the ballot to vote for Holder ... yet, ... Holder received only one absentee vote." No further specifics were found by the Special Tribunal.
The Special Tribunal did not find as a fact that "x" number of absentee ballots from the Sunflower and Moorhead precincts had been cast in violation of the Absentee Balloting Procedures Law. This Court does not sit as a fact-finder and more specific facts should have been found by the Special Tribunal. Nonetheless, a fair reading of the record reveals Holder presented proof beyond a reasonable certainty that twelve (12) of the absentee votes cast were illegal. Five (5) other witnesses presented had not voted by absentee ballot. Three (3) additional witnesses who had voted absentee arguably cast legal votes despite technical violations of the statutes; at the very least, the absentee ballots of two of the voters clearly reflected their will and proof to the contrary is lacking regarding the third.
Rogers claims the tribunal erred in invalidating the absentee ballots of Sunflower and Moorhead as a class, rather than invalidating only those absentee ballots as to which voter fraud was proven. Holder appears to argue that there was indeed a finding of voter fraud, allowing invalidation of all absentee ballots. Furthermore, Holder contends that violations of mandatory provisions of the Mississippi election code warrant voiding the entire class of absentee ballots from the precincts at issue. Alternatively, Rogers claims the tribunal had authority only to void results of entire precinct or precincts implicated, including both absentee and poll votes, which would make Rogers the victor. Holder claims that this argument is contrary to Mississippi statutory and case law, which gives the tribunal discretion and power to void only the votes tainted by illegality and determine whether a special election is in order.
Holder presented twenty witnesses, yet proved beyond a reasonable certainty only that twelve (12) absentee votes of the eighty-five (85) cast in the Sunflower and Moorhead precincts were illegal. Despite allegations of fraud so far-reaching that all absentee votes in these precincts were tainted, nothing further was proved. Three of the witnesses who cast absentee ballots apparently cast votes which reflected their will. There is no way to discern how many of the other absentee ballots cast did or did not reflect the will of the voters. As Holder failed to meet his burden of proving fraud beyond a reasonable certainty regarding all but twelve (12) of these votes, it would appear imprudent to declare all absentee ballot votes from the Sunflower and Moorhead precincts void, thereby disenfranchising those voters. Likewise, to void all absentee ballot votes and all poll votes from those precincts on the evidence presented appears an inappropriate response which would disenfranchise even more voters, regarding whom there were no allegations of fraud.
If the twelve (12) illegally cast absentee votes are not counted in the tally, Rogers would still win the election, 3,716 votes to Holder's 3,680. Under this prong of Russell, no new election is warranted.

B. Amount of Disqualified Votes
When the amount of votes disqualified is substantial enough that it is impossible to discern the will of the voters, a special election is required. Stringer, 608 So.2d at 1357. Whether the amount of disqualified votes is substantial enough to warrant a special election depends upon the particular facts and circumstances of each case, *651 i.e., the nature of the procedural requirement(s) violated, scope of the violation(s), and ratio of illegal votes to the total votes cast. Rizzo, 530 So.2d at 129, quoting Walker v. Smith, 213 Miss. 255, 264, 57 So.2d 166, 167 (1952). Disenfranchisement of a significant number of voters may create sufficient doubt as to the election results to warrant a special election, even absent evidence of fraud. Stringer, 608 So.2d at 1357, citing Russell, 443 So.2d at 1198. See also, Rizzo, 530 So.2d at 128. Invalidation of more than thirty percent (30%) of the total votes cast is generally sufficient to require a special election. See Russell, 443 So.2d at 1198. However, even where the percentage of illegal votes is small, if attended by fraud or willful violations of the election procedure, this Court will order a new election without reservation. Rizzo, 530 So.2d at 128, citing Harris v. Stewart, 187 Miss. 489, 193 So. 339 (1940); Hayes v. Abney, 186 Miss. 208, 188 So. 533 (1939). The aim is to balance the interest of the electorate with that of the successful contestant. Rizzo, 530 So.2d at 128.
The procedural requirements violated in this case are mandatory in nature. The scope of the proven violations is small. The illegal votes cast constitute only sixteen hundredths of one percent (.16%) of the total votes cast. Nonetheless, as discussed previously, these violations do not consist of mistakes or inadvertence on the part of the voters or election officials. Rather, the violations of the absentee ballot election procedures by Rogers' supporters were willful and attended by a "reasonable inference" of fraud, arguably warranting a new election. Rizzo, 530 So.2d at 128, citing Harris v. Stewart, 187 Miss. 489, 193 So. 339 (1940); Hayes v. Abney, 186 Miss. 208, 188 So. 533 (1939).
In fact, a new election was ordered by Governor Fordice and has been held; Holder was declared the winner by a vote of 4,147 to 3,568. Two of the arguments against new elections cited by this Court  diminished voter turnout and the expense involved  are moot. Voter turnout in the special election was actually greater than it had been in the original election contested here and the expense of a special election has already been borne by the taxpayers. The interest of the electorate (electing the candidate chosen by the majority of voters) and Holder's interest as a successful contestant (a new election free of vote fraud) appear to have been well served by the special election. The results in Holder's favor also tend to support his allegations of widespread fraud in connection with the original election of October 8, 1991.
During the pendency of this appeal a special election was held by order of Governor Kirk Fordice. Holder received the majority of votes, 4,147 as compared to Rogers 3,568. The results of this special election are the basis for Rogers' Motion to Strike which was passed for consideration along with the merits of this appeal.
Rogers contends that these results from November, 1992, are totally irrelevant to this appeal and are merely an attempt to influence this Court through introducing matters not of record and not part of the evidence presented at the trial of this cause.
Holder argues that the results of the November election are extremely relevant to ascertaining the will of the voters of Sunflower County, who, through the course of an honest election, overwhelmingly re-elected him to another term as sheriff. Holder argues that we should take judicial notice of his overwhelming victory at the November, 1992, special election.
Although parties to an appeal may not add to the record, pursuant to Miss.Sup. Ct.Rule 10(f), we may certainly take judicial notice of the adjudicative fact that a special election was held and Holder was declared the victor. M.R.E. 201(a), (b), and (f). This information, while neither necessary nor determinative in this appeal, is clearly relevant. Rogers' Motion to Strike is denied.
Although the Special Tribunal erred in voiding all absentee votes in the Sunflower and Moorhead precincts, his conclusion that a special election should be called was correct. Applying the alternatively-pronged Russell test, although a new election is not required under the first prong, a special election is warranted pursuant to the second prong because, although the number of proven illegal votes is small, these votes were cast in violation *652 of the mandatory provisions of the Absentee Balloting Procedures Law and the violations were willful and attended by a reasonable inference of fraud. The Special Tribunal's order for a special election is affirmed.
As a new election has already been held, the results of that election should be certified.
AFFIRMED. RESULTS OF SPECIAL ELECTION HELD IN NOVEMBER, 1992, SHALL BE CERTIFIED.
HAWKINS, C.J., PRATHER, P.J., and PITTMAN, BANKS, McRAE and SMITH, JJ., concur.
DAN M. LEE, P.J., concurs in results only.
JAMES L. ROBERTS, Jr., J., not participating.
BANKS, J., concurs with separate written opinion.
BANKS, Justice, concurring:
Because I believe that the trial court was justified in concluding that deliberate violation of the mandatory provisions of our absentee voting statutes were such as to prevent the conclusion that the will of the absentee voters was truly expressed and that impacted the entire election, I concur in the result reached by the majority. I do not agree that the result of the special election is relevant to that determination and I would, therefore, have granted the motion to strike.