# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-EC-02776-SCT

*JERRY BOYD*

*v.*

*TISHOMINGO COUNTY DEMOCRATIC*
*EXECUTIVE COMMITTEE AND MEMBERS AND*
*GLENN WHITLOCK, INTERVENOR*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/02/2003 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH, III |
| COURT FROM WHICH APPEALED: | TISHOMINGO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | SHIRLEY PAYNE |
| | DENNIS L. HORN |
| ATTORNEY FOR APPELLEES: | RICHARD D. BOWEN |
| NATURE OF THE CASE: | CIVIL - ELECTION CONTEST |
| DISPOSITION: | AFFIRMED - 09/08/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     This appeal involves the contest of a second Democratic primary election for the office of Sheriff of Tishomingo County.  After a hearing in the Circuit Court of Tishomingo County, the special tribunal affirmed the election results and declared Glenn Whitlock the winner. Jerry Boyd, the contestant, challenges this judgment and raises numerous issues on appeal. We affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     The first Democratic primary for Sheriff of Tishomingo County was held on August 5, 2003.  When no candidate received a majority of the votes, the two candidates with the highest number of votes, Jerry Boyd and Glenn Whitlock, faced each other in the second primary on August 26, 2003.  Whitlock won the second primary election with a total of 3,598 votes to Boyd's 3,558 votes, a margin of 40 votes.  Whitlock was certified as the Democratic Party nominee for sheriff on September 2, 2003.  After having filed an election contest with the Democratic Executive Committee, Boyd filed a petition for election contest in the circuit court on September 19, 2003.

¶3.     The hearing began on October 30, 2003.  On October 31, Boyd sought to amend his petition, and the motion was denied.  The hearing ended on November 1.  The judge invalidated some  votes but denied Boyd's request for a special election since the invalidated votes did not change the election's results.  Boyd then requested a stay pending appeal, which was denied. The general election was held on November 4, 2003. The special tribunal's findings and judgment were filed on December 5, 2003, and Boyd subsequently filed a timely notice of appeal.

## STANDARD OF REVIEW

¶4.     For questions of law, we employ a de novo standard of review and will only reverse for an erroneous interpretation or application of the law.  *In re Mun. Boundaries of City of Southaven*, 864 So. 2d 912, 917 (Miss. 2003) (citing *T.T.W. v. C.C.*, 839 So. 2d 501, 503-04 (Miss. 2003)).  When a trial judge sits as a fact finder, his or her findings are reviewed for

manifest error, and the verdict will not be disturbed unless it "is a result of prejudice, bias, or fraud, or is manifestly against the weight of credible evidence." ***Miss. Dep't of Transp. v. Johnson***, 873 So. 2d 108, 111 (Miss. 2004) (citations omitted). However, we are endowed with "the right to make its own construction of authenticated written documents." ***Pegram v. Bailey***, 708 So. 2d 1307, 1313 (Miss. 1997).

## DISCUSSION

¶5. While reviewing any irregularities in the election and voting procedures, our desire for mandatory compliance with voting statutes is balanced with the recognition that mere technical irregularities in the casting of ballots will not be grounds for invalidation absent evidence of fraud or intentional wrongdoing. ***Straughter v. Collins,*** 819 So. 2d 1244, 1252 (Miss. 2002); ***Rogers v. Holder***, 636 So. 2d 645, 648 (Miss. 1994). In determining whether failure to comply strictly with a statute will void an election, the key is whether the act constitutes "such a total departure from the fundamental provisions of the statute as to destroy the integrity of the election and make the will of the qualified electors impossible to ascertain." ***Riley v. Clayton***, 441 So. 2d 1322, 1328 (Miss. 1983).

### I. AMENDMENTS TO THE PLEADINGS

¶6. On the second day of the hearing, Boyd attempted to amend his pleadings (1) to challenge votes cast during the second primary by absentee voters who had obtained second primary ballots without submitting a second application and (2) to question the votes of absentee voters who submitted applications for absentee ballots more than forty-five days prior

to the second Democratic primary. Additionally, Boyd raised an ore tenus motion to amend to question the validity of absentee votes that lacked the signature of either the voter or attesting witness across the flap of the absentee ballot envelope.[1] The special tribunal's order reflects that the formal and ore tenus motions to amend were denied.[2] Boyd argues these denials were error.

¶7.   The special tribunal in an election contest has jurisdiction only to hear those issues that a party raised before the executive committee:

> So it is then that Sec. 15, Sec. 3182 [now Miss. Code Ann. § 23-15-927], requires that the petition for a judicial review shall exhibit as an essential part of the petition a sworn copy of his protest or complaint theretofore made before the executive committee, from which it follows that if the contestant made no protest or contest in writing before the executive committee, there can be no jurisdiction in the special tribunal to review the action of the executive committee, and further that unless a sworn copy of his said protest or contest before the executive committee is made a part of his petition for a judicial review, the said petition will present no cause of action for such a review.

*Darnell v. Myres*, 202 Miss. 767, 772-73, 32 So.2d 684, 685 (1947) (Emphasis & statutory reference added).

---

[1] *See* Miss. Code Ann. § 23-15-633 (Rev. 2001).

[2] The record shows that the special tribunal did in fact consider and rule on Boyd's ore tenus arguments concerning envelope flap signatures even though the tribunal's order reflects that it denied the oral motion to amend. However, the special tribunal was without jurisdiction to consider such issues.

Because the issues Boyd attempted to argue through amendment were not brought before the executive committee, the special tribunal was correct in denying Boyd's written and ore tenus motions to amend.

¶8.     While the procedural bar applies to Boyd's failed motions to amend, we will discuss the merits of two issues he raises to prevent another incorrect application of the law as these issues have great potential to reoccur. Concerning whether signatures on the back of an absentee ballot envelope must actually cross the envelope's flap,  Miss. Code Ann. § 23-15-633 (Rev. 2001),   provides that   "on any envelope where the elector's signature and the signature of the attesting witness are required, the signature lines and the signatures shall be across the flap of the envelope *to insure the integrity of the ballot*." (Emphasis added). Because the Legislature found these requirements to be essential to the guarantee of a ballot's integrity, absentee ballots with signatures failing to cross the envelope's flap should be invalidated.

¶9.     We also note that a second primary election is not a continuation of the first election permitting a bypassing of the statutory requirement that each absentee ballot may only be received upon proper application by an absentee voter. While Miss. Code Ann. § 23-15-625 (Rev. 2001) does not specifically state that a second application is required for an absentee run-off or second primary ballot, the lack of legislative language is telling.  In Miss. Code Ann. § 23-15-683 (Rev. 2001), the Legislature specifically exempted the necessity of requiring second applications, or even second ballots, of those voters qualified under the Armed Services Absentee Voting Law.   Also, Miss. Code Ann. § 23-15-629 (Rev. 2001) entitles

5

permanently, physically disabled voters to automatically receive absentee ballots for all elections. It is obvious, then, that the Legislature intended separate applications for each election unless specific exemptions are provided. There is no such legislative exemption for a second application for absentee voters under Miss. Code Ann. § 23-15-625 (Rev. 2001) or surrounding statutes.

¶10. The requirement for separate applications is strengthened by other legislative language clearly delineating the different elections. Miss. Code Ann. § 23-15-801(a) (Rev. 2001) defines an election as either "a general, special, primary, or runoff election" further separating a primary election from a runoff by definition. When describing the duties of the registrar, Miss. Code Ann. § 23-15-625 (Rev. 2001) instructs a registrar to fill in dates and mail out applications for a *particular* election. Thus, we find that a second primary is not a continuation of the first. Each primary requires a separate application unless otherwise exempted by voting law.

## II. ILLEGAL ABSENTEE VOTES.

¶11. Boyd alleges that there were a number of illegal votes cast in this election; therefore, the burden is on him, as the contestant, to prove both the existence of these illegal votes and that there were enough cast to change the election's result. *Walker v. Smith*, 213 Miss. 255, 57 So. 2d 166 (1952). Additionally, an election may be invalidated when there has been a "substantial failure" to comply materially with the applicable statutes and the intent of the voters is impossible to ascertain. *Walker*, 57 So. 2d at 166-67.

6

¶12. If a petitioner succeeds in an election contest below, an alternatively-pronged test is applied to determine whether a special election is warranted. *Rogers*, 636 So. 2d at 647. In such a situation, a special election will be required if either "(1) enough illegal votes were cast for the contestee to change the election result or (2) the amount of votes disqualified is substantial enough that it is impossible to discern the will of the voters." *Id.* When a contestant, such as Boyd, is unsuccessful in his contest, "only the tainted votes are rendered void and the outcome of the election is determined by the legal votes cast." *Id.* (citing *Rizzo v. Bizzell*, 530 So. 2d 121, 128 (Miss. 1988)). As we conduct our review of the absentee ballots cast, we are afforded the right to make our own construction of authenticated written documents. *Pegram*, 708 So. 2d at 1313.

¶13. The opinion and judgment of the special tribunal notes that thirteen ballots were invalidated by agreement of the parties.[3] We also agree with the tribunal as to two votes it ruled invalid, those of Velma Mathieu and O.L. Cain. Mathieu's name was signed on the voting ledger as Velma B. Pardue, which reflects the last name of her attesting witness, Dorothy Pardue. As there is doubt as to the identity of the individual who actually cast the ballot, we affirm the special tribunal's decision to invalidate this ballot. Cain failed to sign her ballot envelope. An "X" does appear on the signature line of the ballot envelope yet another person

---

[3]We use the number of votes the special tribunal's opinion states were stipulated by both parties even though the record reflects that sixteen votes were invalidated by stipulation. Boyd raises the issue of whether deference should be paid to the special tribunal's order since it conflicts with record testimony on a few occasions. Because none of the discrepancies are significant enough to affect the outcome of this case, the issue of deference to the tribunal's opinion is not dispositive and need not be considered.

failed to indicate that she was making her mark to indicate that she could not write. Since there is no signature on the ballot envelope, we uphold the special tribunal's ruling to invalidate her vote.

¶14. Boyd asserts that certain ballots should be invalidated because they lack notary seals in violation of Miss. Code Ann. § 23-15-631 (2000). However, the ballots in question either do contain some sort of seal or are signed in conjunction with § 23-15-631(c)'s exception to the seal requirement for voters who are temporarily or permanently disabled. Additionally, there is no evidence of fraud or intentional wrongdoing. Boyd's contentions regarding these ballots are without merit.

¶15. Boyd assigns error to the special tribunal's refusal to invalidate a number of absentee ballots that were "twice-attested." *See* Miss. Code Ann. § 23-15-635 (Rev. 2001). We will only consider the votes attested twice by Sherry Buckles because Boyd failed to preserve any record of the other votes he alleges should be invalidated. ***Am. Fire Prot., Inc. v. Lewis***, 653 So. 2d 1387, 1390 (Miss. 1995). Sherry Buckles completed both the certificate of the attesting witness and the certificate of person providing voter assistance on the back of absentee ballot envelopes of fourteen physically disabled voters. Boyd argues such a double attestation invalidates the ballots because the certificate of the attesting witness requires the witness to swear that the voter voted out of the witness' presence without any solicitation or advice, while the voter assistance certificate requires the witness to swear that the voter required assistance and such assistance was provided by the witness. Buckles testified that any mistakes were completely unintentional and that she had no intent to defraud or mislead

8

anyone. The special tribunal did not invalidate these votes. Looking at the ballot envelopes, two of the three headings in bold print read "Certificate of Attesting Witness" and "Certificate of Person Providing Voter Assistance." While only one of the certificates should have been filled out by Buckles, it is easy to envision how one could view themself as both an attesting witness and one providing voter assistance when dealing with a physically disabled voter. Such a mistake is certainly of a technical nature. *Straughter*, 819 So. 2d at 1252. With no evidence of fraud or wrongdoing, there is nothing in the record to justify overturning the special tribunal's determination that the votes should not be invalidated because of this technical irregularity.

¶16. Finally, Boyd submits that the special tribunal erred in failing to invalidate ballots based on a failure of the questioned ballots' applications to include a reason for voting absentee. *See* Miss. Code Ann. §§ 23-15-623 & -627 (Rev. 2001). There are three ballots that do not state a reason for voting absentee. However, the applications for these absentee ballots were filled out and notarized by the circuit clerk, strengthening the integrity of the applications and rendering the lack of a reason for absentee voting a technicality that does not justify invalidating the three votes.

### III. "SPOILED" v. "UNSPOILED" BALLOTS.

¶17. Boyd argues that there were ballots cast in the second primary which were marked for more than one candidate yet were not marked "spoiled" while a valid vote cast for him was

9

voided. Boyd cites to Miss. Code Ann. §§ 23-15-547[4] and -477[5] (Rev. 2001) as support for his claim that ballots were improperly counted or excluded. These ballots must be considered in light of our earnest desire that the will of voters be ascertained and honored. *Riley*, 441 So. 2d at 1328.

¶18.    One ballot reflected a vote for Whitlock. Boyd contends that this vote should have been disallowed because the voter wrote in the name "David Smith" on the line for write-in candidates, though he/she did not blacken the arrow pointing to that write-in candidate. A second ballot reflects a ballot where the voter cast a vote for Boyd but the ballot was voided. Boyd contends that this was a clean ballot that should have been counted, but Whitlock argues that the ballot was properly rejected because, in voting for constable on that same ballot, the voter marked the line for a write-in candidate yet failed to write in the name of any candidate. A third ballot reflects a vote which was counted for Whitlock; however, it also shows that the voter started to vote for Boyd but changed his/her mind because that line was ultimately "X"ed out. A fourth is a summary of excluded votes from Hubbard Salem Precinct, one being an over-voted ballot.

---

[4] Miss. Code Ann. § 23-15-547 (Rev. 2001) states: "If the voter marks more names than there are persons to be elected to an office, or if for any reason it be impossible to determine from the ballot the voter's choice for any office voted for, his ballot so cast shall not be counted for that office. A ballot not provided in accordance with law shall not be deposited or counted."

[5] Miss. Code Ann.§ 23-15-477 (Rev. 2001) states, in part: "Any voter who spoils his ballot or ballot card may return it and secure another. The word "SPOILED" shall be written across the face of the ballot and it shall be placed in the envelope for spoiled ballots."

¶19. The record does not reflect that the special tribunal ruled on these "spoiled ballot" challenges during trial; however, the opinion and judgment of the special tribunal upheld the executive committee's decisions regarding these challenged ballots. We find that the challenge to the summary of excluded votes from Hubbard Salem precinct should be denied as it does not even constitute an actual ballot. Concerning the ballot showing Boyd's name "X"ed out and then showing a vote for Whitlock, we find that the challenge should be denied as it can reasonably be determined that the voter intended to vote for Whitlock. The ballot listing "David Smith" as a write-in candidate but voting for Whitlock was properly counted. Since the voter clearly marked the arrow pointing to Whitlock's name and not "David Smith," we can determine that the voter's intention was to vote for Whitlock.

¶20. We find, however, that the special tribunal erred in excluding the ballot of a voter who declined to vote for anyone in the constable's race but marked the line designated for write-in candidates. In the sheriff's race, the voter clearly cast a vote for Boyd. As the intent of the voter could reasonably be determined as to the office of sheriff, the special tribunal erred in failing to count this vote for Boyd.

### IV. OTHER ASSERTIONS OF ERROR

*1. Recusal*

¶21. Boyd argues that the special judge should have recused himself because of comments the judge made to Boyd's counsel. The standard for recusal is "whether a fair-minded person, knowing all the facts, might reasonably question the judge's impartiality." ***Upton v. McKenzie***, 716 So. 2d 167, 172 (Miss. 2000). The judge threatened to hold Boyd's counsel in contempt

11

for an outburst made by the attorney in court. Boyd's counsel had been warned against such displays roughly five times before the judge's comments were made. Considering the behavior of Boyd's attorney and the fact that the attorney was never actually held in contempt, Boyd fails to meet the standard for recusal pronounced in *Upton.*

### 2. *Delivery of Ballot Boxes and "One Hundred Fifty Feet Prohibition"*

¶22. Boyd alleges that precinct manager Pete Walker, Whitlock's cousin, did not deliver the ballot boxes from his precinct "forthwith," as required by Miss. Code Ann. § 23-15-473 (Rev. 2001). Boyd also alleges that Whitlock violated the "spirit and intent" of Miss. Code Ann. § 23-15-895 (Rev. 2001) by having supporters "accost" voters within 150 feet of a polling place. The record reflects that Boyd produced no evidentiary basis for his allegations. Additionally, since Boyd's original complaint did not include these assertions of error, they are improperly raised for the first time on appeal. *Smith v. Franklin Custodian Funds, Inc.*, 726 So. 2d 144, 147 (Miss. 1998). Thus, Boyd's argument is without merit.

### 3. *Disenfranchisment of Voters by the Purging of Voter Rolls*

¶23. Boyd also asserts that the special tribunal erred in refusing to recognize his claims that certain voters were disenfranchised by being wrongfully purged from the voter rolls. Specifically, he claims at least three voters were kept from voting in the second primary based on letters they received from the circuit clerk's office between the first and second primaries. Boyd, however, offered little to no evidence of wrongdoing and failed to prove, by a preponderance of the evidence, that potential electors were in fact disenfranchised in any way. Boyd's assertions of error are without merit.

12

## CONCLUSION

¶24. Initially, Whitlock received a total of 3,598 votes to Boyd's total of 3,558 votes in the second democratic primary for Sheriff of Tishomingo County, making Whitlock the victor by a margin of forty votes. Both parties agreed to invalidate thirteen ballots during proceedings before the special tribunal, and it correctly chose to invalidate two additional ballots. We find that the special tribunal erred in failing to invalidate one absentee ballot and in affirming one "spoiled" ballot cast for Boyd that should have been counted. However, we hold these errors harmless as Boyd has failed to prove that a sufficient number of illegal votes were cast to change the results of the election. The final vote for the second Democratic primary election for the office of sheriff of Tishomingo County is 3,582 votes for Glenn Whitlock and 3,559 votes for Jerry Boyd, and we declare Glenn Whitlock to be the winner of the second primary.

¶25. Boyd discovered enough questionable votes during trial to possibly change the election's outcome had he been allowed to amend his petition. However, we are unable to ignore the requirements set by the Legislature that the special tribunal only consider those issues raised before the executive committee. This finding does not represent a criticism of Boyd's able attorneys who represented him in an exemplary fashion. Election contests are difficult to litigate, and the short time lines necessarily required do not allow for in-depth investigations.

¶26. The real issue presented by this and many other election contests we routinely deal with is a flawed and failed absentee ballot process. The privilege of voting by absentee ballot is created by Miss. Code Ann. § 23-15-621 (Rev. 2001), and those administering elections must

13

strictly conform to statutory requirements. Only those persons statutorily authorized, such as those who have military duty, travel plans, educational commitments or a disability, should be allowed to exercise this privilege. Miss. Code Ann. §§ 23-15-627, -629, -671 & -713 (Rev. 2001).

¶27. We affirm the special tribunal's judgment.

¶28. **AFFIRMED.**

**SMITH, C.J., COBB, P.J., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**

**GRAVES, JUSTICE, CONCURRING IN RESULT ONLY:**

¶29. I concur with the majority's conclusion that a special election is not warranted here. The special judge was within his broad discretion in denying an amendment to the pleadings. This finding should end the majority's discussion on the matters Boyd sought to introduce via amendment. The majority, however, delves into an overreaching, unnecessary, and improper discussion on the merits of issues not properly before this Court, amounting to the issuance of an advisory opinion. Because this discussion violates a fundamental principle of our jurisprudence which forbids rendering advisory opinions, see *City of Madison v. Bryan*, 763 So. 2d 162, 166 (Miss. 2000); *Allred v. Webb*, 641 So. 2d 1218, 1220 (Miss. 1994), I must concur in result only.