# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-EC-01989-SCT

*ANDREW THOMPSON, JR.*

*v.*

*CHARLES LEWIS JONES*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/02/2007 |
| TRIAL JUDGE: | HON. FRANK G. VOLLOR |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | HARVEY CURTIS CROWLEY |
| | W. ELLIS PITTMAN |
| ATTORNEYS FOR APPELLEE: | RICHARD T. PHILLIPS |
| | PARKER HAYS STILL |
| NATURE OF THE CASE: | CIVIL - ELECTION CONTEST |
| DISPOSITION: | AFFIRMED - 11/13/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., DICKINSON AND RANDOLPH, JJ.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.    This case comes before the Court on appeal from the Circuit Court of Coahoma County.  At issue is whether the Election Commission and Special Circuit Judge Frank G. Vollor erred in ordering a special election to be held for the office of Coahoma County Sheriff.

## FACTS AND PROCEDURAL HISTORY

¶2.    The Democratic Party Primary election for Coahoma County Sheriff was held on August 7, 2007.  The ballot listed six candidates including Andrew Thompson, Jr., the incumbent, and Charles Lewis Jones.  In that primary 6,234 votes were cast and of these

votes Thompson received 3,110 votes (49.89%), and Jones received 2,000 votes (32.08%).[1] In addition to these ballots, 542 absentee and affidavit votes were cast. After tallying the absentee and affidavit ballots, the total results of the primary were: Thompson with 3,339 (50.16%) and Jones with 2,315 (31.51%).[2] Thompson received a majority of the total votes by a margin of eleven votes or 0.16 percent. The Coahoma County Democratic Party Executive Committee certified Thompson the winner of the election. Jones filed this primary election contest in the Coahoma County Circuit Court.

¶3.     Inspection of the absentee ballots revealed that, of the absentee votes counted, 124 votes were defective. Some of the ballots had more than one defect, but in general the defects were as follows: 103 absentee ballots had been cast and counted without being signed by an official authorized to administer oaths for absentee balloting pursuant to section 23-15-627 of the Election Code; twenty-nine absentee ballots had been cast and counted without the envelopes being signed by an attesting witness pursuant to sections 23-15-633 and 23-15-635 of the Election Code; and eleven absentee ballots had been cast and counted with miscellaneous violation of sections 23-15-627, 23-15-631, and 23-15-635 of the Election Code. The votes from these 124 absentee ballots were counted and mixed with the other absentee ballots. These facts were agreed upon by both parties.

---

[1]The record does not include the number of ballots cast for the other four candidates.

[2]The record also does not indicate the number of absentee and affidavit votes received by the other four candidates.

¶4. The circuit court held that the irregularities with the absentee ballots required that the results of the election and the certification thereof be vacated, and a special election be held. Thompson appeals from that order.

¶5. On November 14, 2007, Governor Haley Barbour issued a Writ of Election calling for both a special primary election and a special general election. Thompson subsequently filed an Emergency Motion to Stay Execution Pending Appeal of the trial court's order. In an order by the trial court on November 30, 2007, the Writ of Election was stayed until this Court could address on appeal whether there is to be only one special election, or two elections–a special primary and special general election.

## DISCUSSION

¶6. The standard of review in an election contest is de novo for all questions of law. *Sumner v. City of Como Democratic Exec. Comm.*, 972 So. 2d 616, 618 (Miss. 2008). *See Garner v. State Democratic Exec. Comm.*, 956 So. 2d 906, 909 (Miss. 2007); *Ladner v. Necaise*, 771 So. 2d 353, 355 (Miss. 2000). This Court also reviews the finding of facts "by a trial judge sitting without a jury for manifest error, including whether the findings were the product of prejudice, bias, or fraud, or manifestly against the weight of the credible evidence." *Young v. Stevens*, 968 So. 2d 1260, 1263 (Miss. 2007). *See Boyd v. Tishomingo County Democratic Exec. Comm. & Members*, 912 So. 2d 124, 128 (Miss. 2005).

¶7. In order to determine if a special election is warranted, the facts before the Court must meet the two-pronged test required by *Noxubee County Democratic Exec. Comm. v. Russell*, 443 So. 2d 1191 (Miss. 1983). Under the first prong of the test, a special election is proper when "enough illegal votes were cast for the contestee to change the result of the

3

election . . . ." *Id.* at 1197. The second alternative prong is met if the disqualified votes make it "impossible to discern the will of the voters." *Rogers v. Holder,* 636 So. 2d 645, 647 (Miss. 1994) (citing *Stringer v. Lucas*, 608 So. 2d 1351 (Miss. 1992)).

¶8.     The illegality of the votes depend on the statute of the Election Code which they violate. If the violated statute does not expressly state "that a particular act is essential to the election's validity or that omission of the particular act will render the election void, the statute is considered directory rather than mandatory, so long as the irregular act is not intended to affect the integrity of the election." *Rogers*, 636 So. 2d at 647-648 (citing *Riley v. Clayton*, 441 So. 2d 1322 (Miss. 1983).

¶9.     If the statute is directory, the next hurdle to overcome is the presence of fraud. In *Straughter v. Collins,* 819 So. 2d 1244, 1252 (Miss. 2002), this Court noted that "mere technical irregularities in the casting of a ballot are not grounds for invalidation absent evidence of fraud or intentional wrongdoing." (citing *Campbell v. Whittington*, 733 So. 2d 820 (Miss. 1999)). Thompson argues that where there is no evidence of fraud or intentional wrongdoing ballots should not be disallowed for failure to strictly comply with the technical requirements of the statute. The foundation of Thompson's argument is *Wilbourn v. Hobson*, 608 So. 2d 1187 (Miss. 1992). But that foundation is for the wrong structure. *Wilbourn* dealt with affidavit ballots and not absentee ballots. This Court in *Campbell* distinguished affidavit ballots from absentee ballots by stating "[a]s opposed to voting at the polls, in a public setting where the integrity of the election process can be ensured, absentee voting takes place in a private setting where the opportunity for fraud is greater." *Campbell*, 733 So. 2d at 827. Furthermore, this Court has held that "[t]he real issue presented by this

4

and many other election contests we routinely deal with is a flawed and failed absentee ballot process. The privilege of voting by absentee ballot is created by Miss. Code Ann. § 23-15-621 (Rev. 2001), and those administering elections must strictly conform to statutory requirements." ***Boyd***, 912 So. 2d at 134.

¶10. That strict conformity must be present here. The violations that occurred were not directory, as Thompson contends. Instead, the violations before this Court resulted from a failure to comply with the mandatory requirements of the Election Code.

¶11. The parties stipulated to three classes of violations of the Election Code. The first of these classes contain 103 ballots which violated section 23-15-627 of Mississippi Code Annotated (Rev. 2002). Section 23-15-627 creates a requirement for the signature of the official authorized to administer oaths for absentee balloting, and that requirement is mandatory. Upon violation of a mandatory statutory requirement, the vote is deemed illegal. ***Rogers***, 646 So. 2d at 648. *See* ***Hatcher v. Fleeman***, 617 So. 2d 634, 640-641 (Miss. 1993). Of the 103 absentee ballots in the election for Sheriff of Coahoma County, the blanks where the signatures were to be found were, in fact, blank. The absence of those signatures makes those 103 votes illegal.

¶12. The Court cannot be blind to a direct violation of the Election Code. This Court in ***Rogers*** declared that section 23-15-627 is mandatory. ***Rogers***, 636 So. 2d at 649. Further, in ***Boyd*** this Court held signatures on absentee ballots to an even higher standard. In that case, the signatures of the absentee voters were present on the back of the ballot envelope, but the signatures did not cross the envelope's flap. The Court stated that "[b]ecause the Legislature found these requirements to be essential to the guarantee of a ballot's integrity,

5

absentee ballots with signatures failing to cross the envelope's flap should be invalidated."

***Boyd***, 912 So. 2d at 130.

¶13. One hundred and three absentee ballots were not signed by the official authorized to administer oaths for absentee balloting violating a mandatory requirement of the Election Code. Those 103 ballots are illegal, and therefore, must not be counted.

¶14. In an election where there are illegal votes, only the illegal votes are dismissed and the election is determined by the remaining legal votes. ***Id.*** at 130-131. In this case, removal of the illegal absentee votes from the legal absentee votes was not possible. The contested absentee ballots were commingled with the uncontested absentee ballots. Thompson only won a majority by eleven votes, which included illegal votes. How many of the 103 illegal votes were cast for him is unknown. If the legal absentee ballots could be identified, the will of the voters might be discernable. However, the stain of illegality bled from those 103 ballots onto the remaining 439 ballots tainting the entire lot. Thus, the trial judge could not possibly discern the will of the absentee voters.

¶15. There is no need to address the other two classes of violations in this case because the commingling of one illegal class tainted the entirety of the absentee ballots.

¶16. With the disqualification of the absentee and affidavit ballots, the remaining legal votes are as follows: Thompson with 3,110 votes (49.89%) and Jones with 2,000 votes (32.08%). Without a majority won by either candidate, the trial court ordered a special runoff primary.

¶17. Neither Thompson nor Jones included information about the occurrence of the general election in either of their briefs. Besides alluding to a general election in a portion of the trial

6

transcript, the record is almost silent to the fact that the general election for the Sheriff of Coahoma County was held on November 6, 2007. While parties on appeal may not add to the record under Mississippi Rules of Appellate Procedure Rule 10(f), this Court may take judicial notice of an adjudicative fact, pursuant to Mississippi Rules of Evidence Rule 201, that a general election was held and that Thompson was the winner of that general election. *See* **Rogers**, 636 So. 2d at 651 (This Court took judicial notice of the adjudicative fact that a special election was held).

¶18.    Rule 201 of the Mississippi Rules of Evidence states:

> . . .

> (b) . . . A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

> (c) . . . A court may take judicial notice, whether requested or not.

> . . .

> (f) . . . Judicial notice may be taken at any stage of the proceeding.

> . . .

Miss. R. Evid. 201.

¶19.    The fact that the general election for sheriff took place is both "common knowledge in the jurisdiction of the trial court" and "capable of accurate and ready determination." *Id.* The trial was held in the Circuit Court of Coahoma County. The residents of Coahoma County who voted in the election certainly have common knowledge that the general election

7

has been held. Articles about the race and the election were published in the local paper, the *Clarksdale Press Register*.[3] Furthermore, the fact that there was a general election and the results of that election can be accurately and readily determined by the certified election results located on the Secretary of State's website.[4]

¶20.    Jones contends that there is confusion as to whether a special primary election and a special general election is proper, as ordered by Governor Haley Barbour in the Writ of Election, or whether there is to be one special election for Sheriff of Coahoma County. Jones relies on the language of ***Blakeney v. Mayfield,*** 226 Miss. 53, 63, 84 So. 2d 427, 428 (1956). In that opinion, the Court stated that when a general election had been held prior to the ruling of the appeal from the primary election, a special election should be held. ***Id.*** The Court further clarifies that "[t]he phrase 'special election' is clearly intended to mean a special election in the usual sense of that term, and not a party primary. Nor does this statute contemplate a party primary after the general election, and before the calling of a special election. . . ." ***Id.***

¶21.    In the Writ of Election, Governor Barbour ordered a special primary runoff election to determine the winner between Thompson and Jones. After the Democratic candidate is decided, a special general election is to be held between the Democratic candidate and the previously qualified Independent candidate.

---

[3] http://pressregister.com/articles/2007/11/07/import/20071107-archive.txt.

[4] http://www.sos.state.ms.us/elections/2007/General%20Election/General/Coahoma.pdf at page 8.

8

¶22. The Writ of Election violates Mississippi Code Annotated Section 23-15-937. That section specifically states:

> When no final decision has been made in time as hereinabove specified, the name of the nominee declared by the party executive committee shall be printed on the official ballots as the party nominee, but the contest or complaint shall not thereby be dismissed but the cause shall nevertheless proceed to final judgment and if the said judgment be in favor of the contestant, the election of the contestee shall thereby be vacated and the Governor, or the Lieutenant Governor in case the Governor may be party to the contest, shall call a special election for the office or offices involved, if the contestee has already entered upon the term he shall vacate the office upon the qualification of the person elected at said special election, and may be removed by quo warranto if he fails so to do.

Miss. Code Ann. § 23-15-937(Rev. 2002). Under this statute, only one special election is to be held after the general election has already occurred.

¶23. Under Mississippi Code Annotated Section 23-15-937 and the reasoning laid out by this Court in *Blakeney*, there is to be one special election held to determine the Sheriff of Coahoma County.

## CONCLUSION

¶24. For the reasons stated above, this Court affirms the judgment ordering the special election for the office of Sheriff of Coahoma County.

¶25. **AFFIRMED.**

**WALLER, P.J., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, P.J., AND GRAVES, J., DISSENT WITHOUT SEPARATE WRITTEN OPINION. EASLEY AND LAMAR, JJ., NOT PARTICIPATING.**