381 So.2d 627 (1980)
W.H. "Shag" PYRON
v.
Bob JOINER.
No. 52011.
Supreme Court of Mississippi.
March 19, 1980.
Wheeless, Beanland, Shappley & Bailess, John C. Wheeless, Jr., Vicksburg, for appellant.
Keyes, Moss & Piazza, Ben J. Piazza, Jr., Earl Keyes, Jackson, Samuel E. Farris, Hattiesburg, for appellee.
EN BANC.
ROBERTSON, Presiding Justice, for the Court:
On August 27, 1979, W.H. "Shag" Pyron filed his Petition to Contest with the State Democratic Executive Committee challenging the Committee's certification of Bob Joiner as the winner in the Democratic primary election for Highway Commissioner from the Southern District, the Committee having found that Joiner was the winner by 5 votes, he having received a total of 133,857 votes, and Pyron 133,852 votes in the Democratic primary election held on August 7, 1979. On the contest, the Committee adhered to its former action and granted no relief.
Pyron then filed his Petition for Judicial Review on September 26, 1979, in the Circuit Court of Claiborne County. Pursuant to Mississippi Code Annotated section 23-3-45 (1972), the Chief Justice of the Supreme Court of Mississippi designated and notified Chancellor John C. Love, Jr. to hear and determine this election contest. The judgment of the Special Tribunal rendered on November 13, 1979, stated:
"THIS CAUSE coming on to be heard on the Petition for Judicial Review filed by W.H. `Shag' Pyron and the Answer and Cross-Petition thereto filed by Bob Joiner, said pleadings containing all of pleadings heretofore filed with the State Democratic Executive Committee, and *628 trial of this matter having been commenced on October 15, 1979, in the Circuit Court of Forrest County, Mississippi, in Hattiesburg, Mississippi, said trial having been recessed from day to day, and the situs of said hearing having been moved from time to time to other counties in the district for purposes of convenience, through the date of this Judgment, and the Court, after having heard and considered evidence presented thereon in open court, finds as follows, to-wit:
That, based upon examination of the contents of ballot boxes in twenty (20) of the thirty (30) counties in the Southern Highway District, and, as the result of prior rulings dictated by the Court into the record, that the total votes certified for Bob Joiner should be reduced by 4,565, and the total count certified for W.H. `Shag' Pyron should be reduced by 5,677 votes leaving Bob Joiner with a total vote of 129,292 and W.H. `Shag' Pyron with a total vote of 128,175.
That, having made adjustments in vote totals as previously determined to be necessary, after considering the pleadings of the parties and evidence presented, the Court has determined that Mr. Bob Joiner has a majority of the votes which could legally be counted and considered in connection with this election.
That the Court has announced its findings and its opinion in Open Court, and has filed with the Court a written Opinion, said Opinion being attached hereto as Exhibit `A' and made a part hereof as if copied herein in words and figures in full, and that, based upon the evidence, the Court finds that the relief sought by W.H. `Shag' Pyron should be denied.
IT IS, THEREFORE, ORDERED AND ADJUDGED that the Petitioner, W.H. `Shag' Pyron has not proved that he received the most legal votes, or that substantial irregularities in material particulars have occurred so as to justify the calling of a new election, and that, therefore, the relief sought by the Petitioner should be denied and same is hereby denied."
The margin of Joiner's victory was thus raised from 5 to 1,117.
Pyron has appealed to this Court, and contends here that:
1. The Special Tribunal erred in not ordering a new election because the number of illegal votes exceeded Joiner's winning margin, and
2. The Special Tribunal erred in allowing Joiner to amend his pleadings by deleting from his cross-petition allegations made in his cross-petition before the State Democratic Executive Committee.
The Special Tribunal found that as a result of mathematical or counting errors, contestee Joiner had a net gain of 194 votes, and contestant Pyron had a net loss of 92 votes. Due to improper initialing of ballots or failure to initial ballots, 4,332 votes were declared illegal. Because of managers' failing to count ballots on election day, 258 ballots were declared illegal. Because of ballots marked in lead pencil, 175 votes were declared illegal. Due to a variation in the number of ballots in a box and the number of persons signing the voter register, 225 votes were declared illegal. Because of tampering with a box following the election, 107 votes were declared illegal. These votes declared illegal totaled 5,097 and constituted 1.9% of the 267,709 total votes cast.
Another group of votes totaling 5,290 from Jefferson Davis County was thrown out. Initially these votes were officially counted in the proper manner but the Circuit Clerk failed to properly reseal the ballot boxes after the official count was concluded. Pyron had a 536 vote lead in that county based on the original certification. Joiner moved to invalidate all of the votes in that County and Pyron confessed Joiner's motion.
In his opinion, Chancellor Love stated that the only reason he sustained Joiner's motion to invalidate these votes was because Pyron confessed the motion, and that:
"It was obvious at that point in the proceedings that Mr. Pyron was trying to have all the votes possible declared void *629 in hopes of obtaining a new election and it was for this reason that he confessed the motion."
In hindsight, the trial judge was of the opinion that, under Allen v. Funchess, 195 Miss. 486, 15 So.2d 343 (1943), "the proper procedure would have been to accept the certified result and simply not permit re-examination of those boxes," since the discrepancy occurred after the votes had been officially counted and before the contest was filed.
The trial judge also stated:
"[T]hat even if the Court had accepted the certified figure from Jefferson Davis County, the net result would have been to only add 536 votes to Mr. Pyron's total, and he would still not have had a majority of the votes at the conclusion of these proceedings."
The Tribunal did not consider these 5,290 votes from Jefferson Davis County in computing the ratio of illegal votes cast (5097) to the total votes cast (267,709). Even if these 5,290 votes were added to the 5,097 illegal votes cast, the total would move up to 10,387 illegal votes and the percentage from 1.9% to 3.9%.
In O'Neal v. Simpson, 350 So.2d 998 (Miss. 1977), this Court quoted with approval from Pradat v. Ramsey, 47 Miss. 24 (1872):
"The fundamental principle to which the judiciary look, is whether the election has had a termination, according to the will of a plurality, or majority of those qualified to vote.
.....
"If the election was held at the proper time and place, and under the supervision of competent persons, irregularities which concern merely the form of conducting it will not avail; it must be shown that legal votes have been rejected, or illegal votes have been received, and that because of the one or the other, or both, the result does not conform to the will of the voters, or uncertainty has been cast upon the result." 350 So.2d at 1009.
In Walker v. Smith, 213 Miss. 255, 56 So.2d 84, Suggestion of Error, 213 Miss. 255, 57 So.2d 166 (1952), this Court said:
"In the present case, there were 80 illegal votes, and a total vote of 1229, the illegal votes being only 6.5% of the total votes cast. We do not think that the present facts would warrant the court in saying that there is such a substantial failure to comply in material particulars with the statutes as to invalidate the election, as occurred in May v. Layton, supra, and only under such a state of facts is the contestant's burden of proof reduced from a showing that the contestee's illegal votes if eliminated would change the result, to proving only that enough illegal votes were cast to change the result or leave it in doubt. Appellee therefore failed to meet his burden of proof in contesting Walker's nomination." 213 Miss. at 265, 57 So.2d at 167.
Pyron contends that this language from O'Neal changes the method of comparison from that used in Walker:
"In this case more than seventy votes at the Darling precinct must be voided for the reasons heretofore stated in this opinion. Only twelve votes separated the two candidates in this election so there were sufficient illegal votes to change the result, or to cast uncertainty upon the result, so that the will of the voters cannot be ascertained." 350 So.2d at 1012.
In O'Neal, the Court said it was confronted with two courses of procedure that could be followed. We said:
"First, we could disregard the vote at the Darling precinct [359 votes] because of the violations heretofore shown and declare O'Neal the winner, or, second, we could order a new election. If we followed the first alternative the effect would be to disfranchise a large number of legal voters at the Darling precinct [359]. This we do not choose to do. Because enough illegal votes were cast to change the result of the election, we declare the office of Supervisor, District No. 1, Quitman County, vacant and the Board of Supervisors is directed to fill the vacancy and order an election under the provisions of Section 23-5-195 Mississippi *630 Code of 1972 Annotated." 350 So.2d at 1012.
If all 359 votes cast in the Darling precinct were thrown out and the percentage was figured by dividing 359 by 942 (the total votes cast) the percentage of illegal votes would have been 38.11%. Not only would over 1/3rd of the total votes cast have been invalidated, but also the result of the election would have been changed and the winner would have been O'Neal instead of Simpson.
We are of the opinion that, inasmuch as the illegal votes cast were only 1.9% of the total votes cast, or at most 3.9% (if the total Jefferson Davis County vote was considered in the total of illegal votes), and inasmuch as the result was not changed nor was any doubt or uncertainty cast on the result being in conformity with the will of a majority of the voters, the Special Tribunal was correct in finding that Bob Joiner was the winner in the Democratic Primary and would be the Democratic nominee for Highway Commissioner from the Southern District.
The second assignment of error was that the Special Tribunal erred in allowing Joiner to amend his cross-petition by deleting therefrom certain allegations of irregularities in certain voting precincts. Mississippi Code Annotated section 23-3-49 (1972), contains this pertinent language:
"[T]he judge or chancellor being, however, the controlling judge both of the facts and the law, and to have all the power in every respect of a chancellor in term time; and the tribunal shall be attended by the sheriff, and clerk, each with sufficient deputies, and by a court reporter. The special tribunal so constituted shall fully hear the contest or complaint de novo, and the original contestant before the party executive committee shall have the burden of proof and the burden of going forward with the evidence in the hearing before the special tribunal." (Emphasis added).
The Court also said in Darnell v. Myres, 202 Miss. 767, 32 So.2d 684 (1947) [quoting from Harris v. Stewart, 187 Miss. 489, 193 So. 339, 341 (1940)]:
"In matters of practice and procedure under [The Corrupt Practices Act], and in respect to which the Act itself is silent, there will be applied the usual rules of procedure which prevail as regards other cases." 202 Miss. at 774, 32 So.2d at 685 (Emphasis added).
The usual rule of procedure as to amending pleadings is stated in Mississippi Code Annotated section 11-5-53 (1972):
"Amendments shall be allowed in the pleadings and proceedings, on liberal terms, to prevent delay and injustice."
There is no merit in this second assignment of error.
For the reasons herein stated, the judgment of the Special Tribunal, finding and adjudging that Bob Joiner was the winner in the Democratic Primary and would be the Democratic Nominee for the position of Highway Commissioner from the Southern District, is affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.