# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-EC-00302-SCT

*JOHNNY HARPOLE*

*v.*

*KEMPER COUNTY DEMOCRATIC EXECUTIVE COMMITTEE AND SAMUEL TISDALE*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/07/2003 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH, III |
| COURT FROM WHICH APPEALED: | KEMPER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GARY STREET GOODWIN |
| ATTORNEYS FOR APPELLEES: | MARVIN E. WIGGINS, JR. |
| | LINDA ANN HAMPTON |
| NATURE OF THE CASE: | CIVIL - ELECTION CONTEST |
| DISPOSITION: | AFFIRMED - 08/04/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE COBB, P.J., CARLSON AND GRAVES, JJ.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     After his apparent loss in the August 26, 2003, second Democratic primary election for the office of sheriff of Kemper County, Johnny Harpole filed a petition for judicial review in the Circuit Court of Kemper County, Mississippi.   Upon a dismissal of his petition by specially appointed Circuit Judge Albert B. Smith, III, Harpole appeals to us.   Finding no reversible error, we affirm the judgment of dismissal of the Kemper County Circuit Court.

**FACTS AND PROCEEDINGS IN THE TRIAL COURT**

¶2.     Incumbent Sheriff Samuel Tisdale and challenger Johnny Harpole emerged from a four-candidate field in the first Democratic primary to advance to the second primary to determine the Democratic nominee for the office of sheriff of Kemper County.   In the second primary, Tisdale received 2,191 votes, and Harpole received 2,151 votes.   Thus, on August 27, 2003, the Kemper County Democratic Executive Committee (KCDEC) certified Tisdale to be the Democratic nominee for the office of sheriff.   On the same day, Harpole submitted a brief letter to the KCDEC requesting, inter alia, a "manual recount" because of Tisdale's narrow margin of victory and due to his concerns about the integrity of the ballot boxes.   In this letter, Harpole also requested the KCDEC to investigate his claim that convicted felons had illegally voted in this second primary election.   However, two days later, on August 29, 2003, Harpole, by then represented by counsel, personally delivered a letter to Tisdale, with copies of the letter being delivered to the Kemper County circuit clerk and the KCDEC. In this letter, Harpole notified Tisdale that he was requesting the KCDEC to make arrangements for Harpole and his attorney to examine the ballot boxes from the second primary election, "as soon as possible."

¶3.     On September 5 and 8, 2003,   Harpole and his attorney examined the contents of the ballot boxes and, on September 12, 2003, Harpole, through counsel, filed his contest with the KCDEC.   In this petition, Harpole alleged numerous election day irregularities such as (1) votes being cast by convicted felons; (2) sheriff's deputies transporting prisoners to the polls to vote; (3) sheriff's deputies waiting in the polling place while the prisoners voted; (4) the

2

unauthorized counting of affidavit ballots; (5) the voter sign-in lists containing names of deceased persons; (6) the voter sign-in lists allegedly containing numerous signatures in the same hand-writing; (7) non-residents voting in the wrong precinct; (8) malfunction of the machine counter; (9) improper actions by the resolution committee, including committee service by Tisdale's relative; and, (10) blatant mishandling of absentee ballots.

¶4.     In response to Harpole's petition, the KCDEC, through its chair, Earl Thomas, called a special meeting for Monday, September 22, 2003, at 1:00 p.m., at the Kemper County Courthouse, to consider Harpole's contest.  The certificate of service reveals that via facsimile transmissions, true copies of this Notice were served upon Tisdale and Harpole's attorney. The record reveals that Harpole's attorney received a copy of this notice at 5:03 p.m. on Monday, September 15, 2003.  Thereafter, on September 19, 2003, the KCDEC designated a panel to actually conduct the hearing.[1]   By written order, this panel was charged by the KCDEC with the duty of conducting a hearing to investigate each allegation asserted by Harpole.   This same order likewise made a preliminary determination that the KCDEC was without jurisdiction to investigate Harpole's claims that Tisdale's deputies improperly transported prisoners to the polls to vote, based on the sheriff being charged by statute concerning the incarceration and transportation of prisoners in his custody.   Additionally, the KCDEC made a preliminary determination that it was without authority to investigate Harpole's claims regarding convicted felons being allowed to vote since the Kemper County Election

---

[1]Panel members included, Earl Thomas, chairman, and KCDEC members Edward Nave, Marvin E. Wiggins, Jr., George Roberts, Edna Jackson, Gary Moore, and Angie Rigdon.  Wynelia Cherry served as the secretary of the hearing, but she was not a panel member.

Commission, and not the KCDEC, was charged by law with voter registration and the purging of the voter rolls.

¶5. The panel in fact convened as scheduled on September 22, 2003, in the courtroom of the Kemper County Courthouse. In accordance with the prior order, both Harpole and Tisdale were allowed to present evidence and argue their respective positions to the panel, which thereafter issued its written findings to the KCDEC for consideration. On September 25, 2003, the KCDEC met to discuss the findings of the panel and to render a decision. The KCDEC adopted the findings of the panel and determined that most of Harpole's allegations were either without merit or meaningless because the error affected only a small percentage of the total vote. However, the KCDEC did determine that there were material breaches of absentee voter law. In finding that there was no way to differentiate between a legal absentee ballot and an illegal absentee ballot, the KCDEC held that all absentee ballots would not be counted. In making this determination, the KCDEC concluded that there was no evidence of fraud or willful violation of mandatory election statutes. On September 26, 2003, the KCDEC conducted an official recapitulation without the inclusion of any absentee ballots, and this resulted in Tisdale winning the second primary by 159 votes – 2118 votes for Tisdale, and 1,959 votes for Harpole.

¶6. On October 9, 2003, Harpole filed his sworn petition for judicial review in the Circuit Court of Kemper County. There were attached to the petition for judicial review (1) a copy of his petition (with attachment) filed with the KCDEC on September 12, 2003; (2) The findings of the KCDEC; (3) the certificates of two practicing attorneys; and, (4) a cost bond.

4

Attached to the petition for judicial review were two oaths/verifications signed by Harpole before a notary public. One oath states that all allegations in the petition for judicial review are true and correct as stated, and the other oath states that the attached document is a true and correct copy of the initial petition filed and served upon the KCDEC.

¶7. On October 17, 2003, pursuant to Miss. Code Ann. § 23-15-929 (Rev. 2001), Judge Albert B. Smith, III, a circuit judge from the Eleventh Circuit Court District, was appointed to preside over the proceedings in this election contest. Accordingly, Judge Smith promptly entered an order setting the cause for trial on October 29, 2003; however, an agreed order was later entered continuing the case and setting the matter down for trial on December 11, 2003. This order also established various deadlines and pretrial procedures for the parties and attorneys. Likewise, the order directed the circuit clerk to issue process for service on the five county election commissioners to appear and to serve with the circuit judge as a special tribunal according to law. *See* Miss. Code Ann. § 23-15-931 (Rev. 2001).

¶8. By December 7, 2003, in addition to various pleadings and discovery documents, there were pending before Judge Smith, Tisdale's (1) motion to dismiss, (2) motion to strike, (3) motion for summary judgment with documentation, (4) amended motion to dismiss, (5) second amended motion to dismiss, and (6) amended motion to strike. By, that time, there was likewise pending before Judge Smith, the KCDEC's motion to dismiss and strike. By order dated December 7, 2003, and entered on December 8, 2003, Judge Smith granted Tisdale's motion to dismiss, finding, inter alia, that the court lacked jurisdiction due to several fatal defects in Harpole's petition for judicial review, and, even alternatively addressing the petition

5

on its merits, that Harpole had failed to sufficiently allege violations and irregularities in the second primary sheriff's election to the extent that the will of the qualified voters was impossible to ascertain. Therefore, Judge Smith dismissed, with prejudice, Harpole's petition for judicial review and certified as "official and final" the results from the November general election for the office of Kemper County Sheriff.[2] Harpole thereafter filed a motion to reconsider the circuit court's dismissal, and upon Judge Smith's entry of an order denying the motion to reconsider on January 6, 2004, Harpole perfected his appeal to this Court.

## DISCUSSION

¶9. Harpole claims that the circuit court errored by finding (1) that the special tribunal lacked jurisdiction because of Harpole's failure to allege any act, or failure to act, on the part of the KCDEC so as to allow the special tribunal to undertake a judicial review of the KCDEC's findings; (2) that the special tribunal lacked jurisdiction because the "original contest letter" of August 27, 2003 was not sworn and attached to the petition for judicial review; (3) that Harpole was given the statutory minimum notice of the KCDEC hearing; (4) that Harpole was not entitled to the issuance of blank subpoenas; (5) that the KCDEC had complied with the statutory mandate by designating a panel to conduct an investigatory hearing on Harpole's petition; (6) that the KCDEC had no jurisdiction concerning Harpole's allegations that sheriff's department personnel transported prisoners to the polls to vote; and, (7) that no evidentiary hearing before the special tribunal was necessary to determine the

---

[2]Of course, by the time of the entry of Judge Smith's order, the general election had already been conducted, and Sheriff Tisdale, as the Democratic nominee, won the general election against two Independent candidates with 56% of the vote.

6

validity of Harpole's claims, such as (a) convicted felons voted, (b) citizens voted outside their precinct, (c) dead persons voted,[3] (d) regular, affidavit and absentee ballots were mishandled to the extent that the true will of the voters could not be ascertained, and (e) the KCDEC's investigation was inadequate to disclose the gross election law violations which affected the outcome of the election.

¶10.    We restate for clarity and reorder these issues.

> **I.      WHETHER THE PETITION FOR JUDICIAL REVIEW COMPLIED WITH MISS. CODE ANN. § 23-15-927 SO AS TO CONFER JURISDICTION UPON THE SPECIAL TRIBUNAL.**

¶11.    The circuit court found certain fatal defects in Harpole's petition for judicial review. We address them separately.

> ***A.      Effect of the failure to attach the "original contest letter" of August 27, 2003 to the petition for judicial review.***

¶12.    The circuit court found as jurisdictionally fatal, Harpole's failure to attach his initial contest letter to his petition for judicial review.  We set out verbatim, Harpole's initial letter to the KCDEC:

> To: Kemper County Democratic Executive Committee
>
> From: Johnny Harpole
>
> August 27, 2003

---

[3]Perhaps a more accurate way to say this would be that on the sign-in rolls at the precincts, there appeared the names of persons who were allegedly deceased.

I, Johnny Harpole, request a manual recount of the ballots for the August 26, 2003 sheriff's race. I request this due to the closeness of the race, questionable legitimacy of some boxes and ballots and county (sic) procedures used.

I also, request for the committee to investigate the number of convicted felons that voted on August 26, 2003. I would like to know how many voted, their convictions, and whether or not their votes were legal.

Sincerely

/s/ Johnny Harpole

¶13. The record is silent as to any action taken by the KCDEC as a result of this letter. Two days later, on August 29, 2003, within the statutorily mandated time, Harpole personally delivered a letter to Tisdale informing him that he was requesting an examination of the ballot boxes and designating his attorney as his representative. This letter also requested the KCDEC to make the necessary arrangements for the examination of the ballot boxes. Copies of this letter were sent to the Kemper County Circuit Clerk an to the KCDEC. It is on this letter that the KCDEC acted, and Harpole and his attorney thereafter conducted the examination of the ballot boxes. *See* Miss. Code Ann. § 23-15-911 (Rev. 2001). From this ballot box examination, Harpole then prepared and filed his original contest with the KCDEC on September 12, 2003. It is on this petition that the KCDEC thereafter acted by way of an investigation and ultimate findings as to Harpole's allegations as laid out in his petition. The August 27th letter means nothing. How could Harpole file a protest with the KCDEC before he obtained evidence via the examination of the ballot boxes? As we said in *Waters v. Gnemi*, __ So.2d __, 2005 WL 1385034 (Miss. June 2, 2005; *R'hg denied*, August 4, 2005), it is hardly unusual for an aggrieved candidate to ask for "a recount" although this procedure is

8

foreign to our election laws. *Id.* at *5, ¶ 5 n.8. It is obvious that once Harpole retained counsel, then the correct statutory procedure was followed by way of a request for an examination of the ballot boxes (Sec. 23-15-911), followed by a petition filed with the KCDEC (Sec. 23-15-921). When considering the August 27th letter, the August 29th letter, and the September 12th petition filed with the KCDEC, the only one of these three documents which was statutorily required to be attached to the circuit court petition for judicial review was the September 12th petition filed with the KCDEC. Harpole dutifully attached a sworn copy of this KCDEC petition to his sworn petition for judicial review.

¶14. In fact Harpole meticulously complied with Miss. Code Ann. § 23-15-927. This statute requires that to a sworn petition for judicial review, there must be attached (1) "a sworn copy of [the] said protest or complaint" [filed with the county executive committee], (2) "the certificate of two (2) practicing attorneys that they and each of them have fully made an independent investigation into the matters of fact and of law....and that after such investigation they verily believe that the said protest and petition should be sustained....", and (3) "a cost bond in the sum of Three Hundred Dollars ($300.00), with two (2) or more sufficient sureties conditioned to pay all costs in case [the] petition be dismissed....." When we review Harpole's sworn petition for judicial review, we find attached a sworn copy of the petition filed with the KCDEC, the certificates of at least two disinterested attorneys with the required statutory language, and a cost bond signed by Harpole and two sureties, binding themselves and assuring payment in the amount of $300 in the event that Harpole's petition is dismissed.

9

¶15. However, of significant import is that there are also two separate oaths attached to the petition for judicial review, both oaths being signed by Harpole before a notary public. One oath states, inter alia, that "the matters set forth in the foregoing petition [for judicial review] are true and correct as therein stated of his personal knowledge and information and belief." The other oath states, inter alia, that "the attached document is a true and correct [] of the Petition served on the Kemper County Executive Committee." Even though *Waters* was not decided by this Court until almost two years after Harpole filed his petition for judicial review in the case sub judice, Harpole followed to the letter what we said a contestant must do, procedurally, in filing a petition for judicial review, with an attached sworn copy of the petition filed with the county executive committee. We stated in *Waters*:

> What is required to be attached to the petition for judicial review is "*a sworn copy*" of the petition filed with the county executive committee, not a "*copy of the sworn petition*" filed with the county executive committee. If we accepted Waters's interpretation of Section 23-15-927 and our case law, we would in essence judicially abrogate Miss. Code Ann. § 23-15-921, which clearly does not require that a sworn petition be filed with the county executive committee. Further, Waters's interpretation of the statute would have us say that while Section 23-15-921 does not require that the petition filed with the county executive committee be sworn, that same petition has to be sworn when it is attached as an exhibit to the petition for judicial review which is subsequently filed in circuit court. This is an impossibility.

2005 WL 1385034 *9 (¶ 24). Thus, we find that the circuit court erred in finding that the special tribunal was without jurisdiction to consider this election contest due to Harpole's failure to attach to the sworn petition for judicial review a copy of his initial letter of August 27, 2003, addressed to the KCDEC, when he requested, inter alia, a recount. However, because

10

the circuit court made alternative findings notwithstanding his findings of fatal jurisdictional defects, we do not end our inquiry.

### B. *Sufficiency of the allegations in the Petition for Judicial Review.*

¶16.    First of all, the circuit court found that Harpole had failed to allege any act, or failure to act, on the part of the KCDEC, which would allow the special tribunal to commence a judicial review of the KCDEC's findings.   Both the KCDEC and Tisdale assert that dismissal was appropriate in this action and argue that Harpole failed to set forth with particularity allegations, that if proven to be true, would require a new election.   In essence, both parties assert that the proper remedy was implemented when the KCDEC performed an official recapitulation of the vote count to the exclusion of the absentee ballots, and that the special tribunal could have afforded no more relief.   Conversely, Harpole argues that his petition before the KCDEC, which was attached to the sworn circuit court petition for judicial review, included detailed allegations concerning numerous absentee ballot violations occurring in several precincts, and generally alleging that he should have been declared the winner of the second primary election, and thus the Democratic nominee for Sheriff.

¶17.    Miss. Code Ann. § 23-15-927 (Rev. 2001), which governs judicial review of executive committee decisions regarding primary election contests, states in relevant part:

> When and after any contest has been filed with the county executive committee...and the said executive committee having jurisdiction shall fail to promptly meet or having met shall fail or unreasonably delay to fully act upon the contest..., *or shall fail to give with reasonable promptness the full relief required by the facts and the law*, the contestant shall have the right forthwith to file in the circuit court of the county wherein the irregularities are charged to have occurred...a sworn copy of his protest..., together with a sworn petition,

11

*setting forth with particularity wherein the executive committee has wrongfully failed to act or to fully and promptly investigate or has wrongfully denied the relief prayed by said contest....*

Miss. Code Ann. § 23-15-927 (emphasis added).

¶18.   In *Hickman v. Switzer*, 186 Miss. 720, 191 So. 486 (1939), this Court examined the legal sufficiency of a petition for judicial review.   Moreover, we took the opportunity to interpret specific statutory language requiring that a petition for judicial review set forth "with particularity wherein the executive committee has wrongfully denied the relief prayed for." *Hickman*, 191 So. at 487.  In upholding the dismissal of a contestant's petition, we stated:

> In order for it to appear that the executive committee has wrongfully denied the relief sought, it must appear either from the petition or exhibits thereto that if the matters complained of should be decided in the complainant's favor, the result would be that he and not the contestee would be the nominee for the office in question. Without an allegation to that effect, the petition presents no cause of action.

*Id*.

¶19.   In today's case, the KCDEC, having found that there were material departures from the absentee ballot statutes, ordered that the absentee ballots be excluded from the certified count. The KCDEC thus invalidated all allegedly tainted absentee ballots by excluding the whole of the class of tainted absentee ballots from consideration and, in so doing, remedied Harpole's grievance.   In essence, Harpole attacked the validity of hundreds of absentee ballots in 23 precincts, so the KCDEC threw them all out.   The only relief left to grant Harpole which would allow him to prevail in this election contest would be to grant him the extraordinary remedy of a new election.   Thus, the only way for Harpole to bring a viable cause of action before the

12

special tribunal would be to assert allegations that require statutory relief by way of a new election.

¶20.     When determining whether a new election is the appropriate remedy to an election contest, we have stated:

> The key in deciding whether an act not in strict compliance with the statutory election procedures renders that election void is whether the act is such a total departure from the fundamental provisions of the statute as to destroy the integrity of the election and make the will of the qualified electors impossible to ascertain. *Ulmer v. Currie*, 245 Miss. 285, 147 So.2d 286 (1962); *Sinclair v. Fortenberry*, 213 Miss. 219, 56 So.2d 697 (1952); *Gregory v. Sanders*, 195 Miss. 508, 15 So.2d 432 (1943).

*Riley v. Clayton*, 441 So.2d 1322, 1328 (Miss. 1983).

¶21.     When reviewing election contests, our courts regard the imposition of a new election as a last resort and seek to avoid exacting it as a remedy, if it all possible. Our precedent is quite clear in this regard, and the key consideration in making this decision is whether there is such a radical departure from our election laws so as to require a special election or that alleged illegal votes are attended by fraud or willful violations of election law. In *Waters*, we affirmed the special tribunal's finding that numerous statutory violations by election officials were such a radical departure from our election laws so as to require a special election. 2005 WL 1385034 *26 (¶ 77). In *Rogers v. Holder*, 636 So.2d 645 (Miss. 1994), we found that a special election was indeed a proper remedy due to the fact that the illegal votes were attended by fraud. Our ruling in *Rogers*, clearly states the standard by which we are guided when determining whether to grant the extraordinary remedy of special election:

13

Whether the amount of disqualified votes is substantial enough to warrant a special election depends upon the particular facts and circumstances of each case, i.e., the nature of the procedural requirement(s) violated, scope of the violation(s), and ratio of illegal votes to the total votes cast. *Rizzo*, 530 So.2d at 129, quoting *Walker v. Smith*, 213 Miss. 255, 264, 57 So.2d 166, 167 (1952). Disenfranchisement of a significant number of voters may create sufficient doubt as to the election results to warrant a special election, even absent evidence of fraud. *Stringer*, 608 So.2d at 1357, citing *Russell*, 443 So.2d at 1198. See also, *Rizzo*, 530 So.2d at 128. Invalidation of more than thirty percent (30%) of the total votes cast is generally sufficient to require a special election. See *Russell*, 443 So.2d at 1198. However, even where the percentage of illegal votes is small, if attended by fraud or willful violations of the election procedure, this Court will order a new election without reservation. *Rizzo*, 530 So.2d at 128, citing *Harris v. Stewart*, 187 Miss. 489, 193 So. 339 (1940); *Hayes v. Abney*, 186 Miss. 208, 188 So. 533 (1939). The aim is to balance the interest of the electorate with that of the successful contestant.

*Rogers*, 636 So.2d at 650-51.

¶22. Absent any allegation of fraud, this Court has relied on a two-part test in order to determine whether to throw out an entire election or to only discount the tainted votes. *Noxubee County Democratic Executive Comm. v. Russell*, 443 So.2d 1191, 1197 (Miss. 1983). Stated in different ways, the test "essentially provides that special elections will be required only when (1) enough illegal votes were cast for the contestee to change the result of the election, or (2) so many votes are disqualified that the will of the voters is impossible to discern." *Id*.[4] at 1198 (citing *Walker v. Smith*, 213 Miss. 255, 56 So.2d 84, *suggestion of*

---

[4]*See also* **Noxubee County**, 443 So. 2d at 1198 n.2. This rule was stated slightly differently in **Trahan v. Simmons**, 191 Miss. 353, 2 So.2d 575 (1941), which provided that a special election must be held when enough illegal votes were cast to change the result or leave it in doubt. It should be noted, however, that this statement of the rule does not mean that one only has to show that the number of illegal votes exceeded the winning margin, as language in **O'Neal v. Simpson**, 350 So.2d 998, 1012 (Miss. 1977), might imply. In both **O'Neal** and **Clark v. Rankin County Democratic Executive Committee**, 322 So.2d 753 (Miss. 1975), disqualification of the illegal votes caused a different result which, in and of itself would cast doubt upon the

*error overruled*, 213 Miss. 263, 264, 57 So.2d 166, 167 (1952); ***Pyron v. Joiner***, 381 So. 2d 627 (Miss. 1980). In ***Noxubee County***, the executive committee threw out four ballot boxes for which the only deficiency was that the ballots contained in the boxes were initialed by an election official who inadvertently was acting as both initialing manager as well as receiving manager. 443 So. 2d at 1198. The disqualified votes amounted to 10.4 percent of the total votes cast. ***Id***. In finding that a special election was not necessary, we stated:

> The scope of the violations and the ratio of illegal votes are significant, because even in the absence of fraud, the disenfranchisement of a significant number of voters will cast enough doubt on the results of an election to warrant voiding it... As a rule, if more than thirty percent of total votes have been disqualified, a special election will be required. See, e.g., ***Wallace v. Leggett***, 248 Miss. 121, 158 So.2d 746 (1963); ***Ulmer v. Currie***, 245 Miss. 285, 147 So.2d 285, 147 So.2d 286 (1962); ***Sinclair v. Fortenberry***, 213 Miss. 219, 56 So.2d 697 (1952); ***May v. Layton***, 213 Miss. 129, 55 So.2d 460 (1951). On the other hand, when the percentage of illegal votes is smaller, even though the winning margin is less than the number of illegal votes, a special election may not be required. ***Pyron v. Joiner***, 381 So.2d 627 (Miss. 1980) (disqualification of 3.9 percent of the votes did not warrant special election.) ***Walker v. Smith***, 213 Miss. 255, 256, 56 So.2d 84, suggestion of error 57 So.2d 166 (1952) (disqualification of six percent of the total vote did not warrant a special primary election.).

443 So. 2d at 1198.

¶23. In the case sub judice, Harpole claims that but for numerous absentee ballot violations occurring in several precincts, he would have been the winner. Since Harpole does not allege fraud or willful violation of election code, we apply the litmus test set out in ***Noxubee County***

---

election. Moreover, in ***Pyron v. Joiner***, 381 So.2d 627 (Miss. 1981), we held that a special election was not required even though the initial winning margin was only five votes out of a total of 267,709 votes cast, and this total was later reduced by 10,242 votes after an election contest. ***Id.*** at 630.

15

in order to determine "whether the amount of disqualified voters is substantial enough to warrant a new election." Stated differently, we must determine whether a sufficient portion of the voting public was disenfranchised so as to require the extraordinary remedy of a new election.

¶24. In today's case, the KCDEC ordered that the absentee ballots be tallied and that the resulting tally be deducted from the certified totals. Thus, it was ultimately determined that of the approximately 300 absentee votes and approximately 4300 total ballots cast , roughly seven percent of the total county vote would be affected. Accordingly, the KCDEC properly determined that the integrity of the second primary election for sheriff would be maintained despite the exclusion of the absentee ballots.

¶25. By discounting the tainted absentee votes, the KCDEC granted Harpole the appropriate relief. Moreover, the actions of the KCDEC were consistent with our case law inasmuch as it clearly met the two pronged test set out in *Noxubee County*. Since the total amount of discounted votes amounted to only seven percent of the vote tally, the remedy of a new election is precluded since this percentage falls well within the range wherein we have refused in prior cases to order new elections. Thus, the disenfranchisement of the absentee voters does not cast sufficient doubt on the results of this second primary election to warrant invalidating the election and calling for a special election. As stated by Judge Smith in his order granting dismissal, "the Plaintiff [Harpole] has completely failed to show to the [KCDEC] or to this Court, that any irregularities were of such a gross nature as to call into question whether the results of the election correctly expressed the will of the voters." Since the remedy of

16

ordering a new election in this case was inappropriate, there was nothing further required of the special tribunal by way of an evidentiary hearing. Thus, Judge Smith correctly dismissed the petition for judicial review on this basis.

## II. WHETHER HARPOLE WAS PREJUDICED BY THE PROCEDURAL DECISIONS OF THE KEMPER COUNTY DEMOCRATIC EXECUTIVE COMMITTEE.

¶26. Harpole asserts that the KCDEC committed three specific errors in the performance of its duties. Harpole maintains that he did not receive proper notice of the scheduled KCDEC hearing; that he was denied his right to a fair and impartial hearing the KCDEC's refusal to issue subpoenas in blank; and, that by the designation of a panel he was improperly denied a hearing in front of the whole of the KCDEC.

### A. Harpole's notice to appear before the Kemper County Democratic Executive Committee.

¶27. Harpole argues that the five (5) day notice requirement prescribed in Miss. Code Ann. § 23-15-921 was violated as he received notice on September 15 and the hearing was scheduled for September 22. Specifically, Harpole maintains that his attorney received of notice at the end of the business day on Monday, September 15, 2003. Accordingly, he excludes Tuesday and counts only four business days, including: Wednesday, Thursday, Friday, and Monday, September 22, 2003, the day of the hearing.

¶28. Miss. Code Ann. § 23-15-921 reads in relevant part that:

> [I]t shall be the duty of the executive committee to assemble by call of the chairmen or three (3) members of said committee, notice of which contest shall be served five (5) days before said meeting...

¶29.   Of equal importance in calculating the time as required by statute, Miss. Code Ann. §

1-3-67 reads:

> When process shall be required to be served or notice given any number of days,
> the day of the act, event or default from which the designated period of time
> begins to run shall not be included. The last day of the period so computed shall
> be included unless it is a Saturday, a Sunday or a legal holiday, or any other day
> when the courthouse or the clerk's office is in fact closed, whether with or
> without legal authority, in which event the period runs until the end of the next
> day which is not a Saturday, a Sunday, a legal holiday, or any other day when the
> courthouse or the clerk's office is closed. When the period of time prescribed
> or allowed is less than seven (7) days, intermediate Saturdays, Sundays and legal
> holidays shall be excluded in the computation.[5]

¶30.   The chairman of the Executive Committee, Earl Thomas, set a hearing for Monday,

September 22, 2003, at 1:00 p.m.  Harpole's attorney stated in his sworn affidavit that he was

served with notice of the hearing on Monday, September 15, 2003.  Excluding Monday, the

15th, but counting Tuesday, the 16th, Wednesday, the 17th, Thursday, the 18th, Friday, the 19th,

and Monday, the 22nd, Harpole received the required five-day statutory notice for the hearing

before the KCDEC. Miss. Code Ann. § 1-3-67 clearly states that "[t]he last day of the period

so computed shall be included unless it is a Saturday, a Sunday or a legal holiday."  The last day

of the period was Monday, and, as such, counts towards time computation.  Since the statutory

time is less than seven days, intermediate Saturdays and Sundays are, and were, excluded in this

computation.  From September 15, 2003, through September 22, 2003, inclusive, there were

no legal holidays to exclude. Thus, there is no merit to this assignment of error.

---

[5]Although Miss. R. Civ. P. 81(a)(4) clearly states that the rules of civil procedure have only limited
applicability to election contests, which for the most part are governed by statute, we note that the provisions
of Miss. R. Civ. P. 6 (a) are almost identical to the statutory provisions, after the 1991 amendments.

### B.    *The KCDEC's refusal to issue blank subpoenas to Harpole.*

¶31.    Harpole complains that his hearing rights were abridged when the KCDEC chair refused to issue subpoenas in blank.  Miss. Code Ann. § 23-15-925 confers subpoena powers upon a county executive committee in election contests in order to assure that the executive committee can perform its statutory duties to investigate claims of election law violations. Section 23-15-925 states, "[f]or the proper enforcement of the preceding sections the committee has the power to subpoena and, if necessary, attach witnesses needed in said investigation."

¶32.    In ruling on this issue, Judge Smith appropriately found Harpole's argument to be without merit and stated:

> [Harpole] does not complain that the DEC refused to issue subpoenas on his behalf, rather he contends that the DEC refused to issue blank subpoenas to him. This Court can find nothing in the statutes that would require, or even authorize, the DEC to issue blank subpoenas.  The fact that the DEC refused to issue blank subpoenas in no way infringed upon his right to have witnesses subpoenaed on his behalf to testify before the committee.

¶33.    Harpole was not denied his right to subpoena witnesses – the KCDEC merely refused to give him blank subpoenas. This issue is without merit.

### C.    *The hearing before the Panel designated by the KCDEC.*

¶34.    Harpole contends that the KCDEC acted improperly in denying him a hearing before the full committee.  After giving notice to the parties and counsel concerning the September 22nd hearing, the KCDEC, by order, designated seven of its committee members to serve on this panel, plus an additional committee member was designated to serve as the secretary, but

19

she was not a panel member. The panel proceeded to diligently perform its duties and after the hearing of September 22, 2003, entered a detailed written findings of fact, which was thereafter considered and adopted by the full committee. Miss. Code Ann. § 23-15-921 in pertinent part states that "it shall be the duty of the executive committee...to investigate the grounds upon which the election is contested and, by majority vote of members present, declare the true results of such primary." In his written opinion, Judge Smith interpreted this language and stated:

> Nowhere in the statute does it specify the manner in which the committee is to conduct its investigation. In the instant case, the DEC met and designated a panel to conduct a hearing on [Harpole's] Petition. The panel conducted the investigation and held a hearing on September 22, 2003, at which time both sides were given the opportunity to present evidence. After conducting the hearing, the members of the committee unanimously declared its findings. It is the opinion of this Court that the DEC fulfilled not only the actual written statutory requirements imposed upon it, but also the spirit of fairness and justice embodied by the statutes. The DEC did not violate [Harpole's] statutory rights in the way it conducted its investigation.

¶35. Judge Smith appropriately found this issue to be without merit. Simply put, Judge Smith's interpretation of the statute makes good sense. Our cases are legion where we acknowledge the necessary time constraints involved in election contests so that uncertainty can become certainty and the elections can proceed. In appropriately putting this election contest on a fast track, the KCDEC at least inferentially acknowledged its full membership would experience extreme difficulty in putting their personal lives on hold while they, on short notice, dropped everything to be involved in a fairly lengthy investigative hearing to fairly consider the evidence presented. Thus, the designation of a smaller panel consisting of

20

KCDEC members satisfied both the "fast-track" requirement existing in election contests, but of equal importance, such action also satisfied the fairness requirement existing in election contests so as to give full, complete and serious consideration to the contestant in an election contest. Accordingly, the KCDEC fulfilled its statutory directive and investigated all grounds included in the contest (with the exception of those excluded by its order), made preliminary findings regarding these grounds prior to the hearing, conducted an evidentiary hearing, and ultimately unanimously adopted the panel's findings rendered pursuant to the hearing. There is thus no merit in this assignment of error.

### III. WHETHER THE SPECIAL TRIBUNAL ERRED IN DETERMINING THAT THE ISSUE OF SHERIFF'S DEPUTIES TRANSPORTING PRISONERS TO THE POLLS WAS NOT PROPERLY BEFORE THE EXECUTIVE COMMITTEE.

¶36. Harpole alleges that Sheriff Tisdale utilized his deputies to bring prisoners to the polling precincts to vote and argues that the KCDEC acted improperly in not ruling on whether this practice was in violation of Miss. Code Ann. § 23-15-895. The KCDEC maintains that it was without jurisdiction to consider this issue and that Harpole's allegations fell outside the scope of what the KCDEC was authorized to do.

¶37. Miss. Code Ann. § 23-15-895 (Rev. 2001) states in pertinent part:

It shall be unlawful for any candidate for an elective office, or any representative of such candidate, or for any proponent or opponent of any constitutional amendment, local issue or other measure printed on the ballot to post or distribute cards, posters or other campaign literature within one hundred fifty (150) feet of any entrance of the building wherein any election is being held. It shall be unlawful for any candidate or a representative named by him in writing to appear at any polling place while armed or uniformed, nor shall he display any

21

badge or credentials except as may be issued by the manager of the polling place.

Other than this statute, our election code does not address the issue presented by Harpole. Moreover, county executive committee members are clothed only with specific statutory authority and function only as arbiters of election law as it applies to an election contest. Harpole's original allegation, as filed with the KCDEC, lists under general irregularities that "[s]heriff's deputies transported prisoners to the polls to vote, and waited in the polling place while they voted." In Harpole's petition for judicial review, he failed to expound on this allegation and now on appeal of the dismissal of his petition for judicial review brings this issue before this Court pursuant to Miss. Code Ann. § 23-15-895.

¶38. In ruling on this issue in its preliminary findings, the KCDEC stated:

> The said Petition alleges that the Respondent, Samuel Tisdale, was engaged in the transportation of inmates and/or convicted felons to polling places to vote on August 26, 2003. The said Executive Committee does not have jurisdiction of matters involving the powers and authority of sheriffs in this State as to the custody or transportation of individuals committed to the sheriff. As such, the matter of whether [Tisdale] acted within his authority to do so is beyond the scope of the said Executive Committee. Therefore, the hearing panel will not consider any issue as to whether [Tisdale] engaged in the transportation of inmates and/or convicted felons to polling places to vote.

In his petition for judicial review, and on appeal, Harpole does little more than include the same allegation and fails to couch his argument in a manner in which, if proven to be true, would nullify the election results. Furthermore, he failed to challenge the KCDEC's ruling and request the special tribunal for relief regarding the specified violations.

¶39. Instead of presenting the special tribunal with a claim supported by credible evidence indicating that sheriff's deputies were indeed in the polling precincts and were there under illegal pretenses constituting a willful violation of Mississippi election laws, Harpole merely attached his one-sentence allegation as presented for investigation by the KCDEC. To this end, he never alleged anything beyond the named irregularity itself.

¶40. Recently, in *Barbour v Gunn*, 890 So. 2d 843 (Miss. 2004), we outlined what issues are properly appealed to a special election tribunal and stated:

> Miss. Code Ann. § 23-15-927 plainly states that an election "contestant *shall have* the right forthwith to file in the *circuit court of the county* wherein the irregularities are charged to have occurred," *if* the "executive committee having jurisdiction shall fail to promptly meet or having met shall fail or unreasonably delay to fully act upon the contest or complaint, or shall fail to give with reasonable promptness the full relief required by the facts and the law." (emphases added).

890 So. 2d at 847. Thus, section 23-15-927 not only affords a contestant the opportunity to appeal for prompt and complete relief in his petition for judicial review, it enables a contestant to appeal to a court clothed with the jurisdictional capacity to decide all issues.

¶41. The requirements when filing a petition for a judicial review in an election contest are straightforward. Moreover, issues must be couched in terms that clearly evidence what facts and by what law a contestant might prevail. In *Hickman v. Switzer*, 186 Miss. 720, 191 So. 486 (1939), this Court outlined what is required in a contestant's petition for judicial review:

> [T]he Statute requires a petition for a judicial review to set forth "with particularity wherein the executive committee *** has wrongfully denied the relief prayed *** for". In order for it to appear that the executive committee has

wrongfully denied the relief sought, it must appear either from the petition or exhibits thereto that if the matters complained of should be decided in the complainant's favor, the result would be that he and not the contestee would be the nominee for the office in question. Without an allegation to that effect, the petition presents no cause of action.

191 So. at 487.

¶42.    On this issue, Judge Smith found:

[Harpole] contends that the DEC acted improperly in not ruling on whether or not Miss. Code Ann. § 23-15-895 was violated when [Tisdale] allegedly had prisoners transported to the polling places to vote, while Sheriff's Deputies waited.    The DEC refused to address this issue claiming that it lacked jurisdiction over sheriffs and the transporting of inmates. [Tisdale] denies that this practice took place at all.    Based on the pleadings and the law governing this matter, this Court can not disagree with the DEC's jurisdictional ruling, therefore that issue is not properly before this Court.

While Judge Smith addressed the allegation concerning the sheriff's deputies and referred to the relevant statute, he was not presented with the argument that has been made before this Court on this appeal in regards to electoral representatives of Tisdale's being present at the polling places.    Furthermore, in making his allegation, Harpole has never supported it with viable evidence or presented it in a manner to suggest that, but for this occurrence, he would have won the second primary election for sheriff.

¶43.    Additionally, an overriding concern of primary importance to this Court, and we believe to our Legislature which adopted our election code, is that election contests be resolved in an efficient and expeditious manner.    Moreover, the statutes operate to reduce an election contest to its dispositive issues and to prevent a contestant from merely making blanket allegations in an effort to change the outcome of the election.    To this end, Harpole's blanket allegation at

24

least inferring that Tisdale illegally directed his deputies to transport prisoners to the polling places never materialized into an actual claim of injustice inasmuch as he never presented the claim with particularity or supported such a claim with any credible evidence.

¶44.    For these reasons, we find this issue to be without merit.

IV.    **WHETHER THE CIRCUIT COURT ERRED WHEN IT DISMISSED THE PETITION FOR JUDICIAL REVIEW WITHOUT ALLOWING A TRIAL DE NOVO BEFORE THE SPECIAL TRIBUNAL.**

¶45.    Harpole asserts that the KCDEC erred in its determination to discount the whole of the absentee ballots because there were material departures from the absentee ballot statutes. Furthermore, he asserts that the circuit court's affirmance of this decision was error and that, to the extent that the number of illegal uncounted absentee ballots exceeds the difference between the two candidates, a new special election is required.  Our disposition of the absentee ballot issue is controlled by our discussion in *I.B.*, supra.  This issue is thus without merit.

¶46.    However, Harpole also contends that in addition to the absentee ballots, election officials, including the KCDEC, improperly handled affidavit ballots, damaged ballots, regular ballots, and otherwise committed gross irregularities which affected the outcome of the election and called into question whether the will of the voters had been accurately ascertained. From the record before us, we are satisfied without doubt that both the and the special tribunal promptly, diligently, efficiently, and fairly discharged its duties in addressing this election contest.  We are convinced that Harpole is entitled to no relief on these issues.

¶47.    In *Noxubee County*, we stated:

25

When deciding whether a special election is warranted, we recognize competing interests which must be weighed and balanced. While the voters are not parties to this contest, their interests are paramount. Special elections are a great expense for the county and its taxpayers. Beyond that, the turnout for a special election is never as great as when there are a number of candidates on the slate. By contrast, we feel that the rights of the individual candidates cannot be allowed to overshadow the public good.

As far as the public good is concerned, the rights our law gives losing candidates to contest elections form a double edged sword. While they serve to prevent the fraudulent manipulation of the public will, they necessarily provide a way for the unsuccessful candidate to use innocent human errors to his own advantage, thereby winning a second chance.

443 So.2d at 1197.

¶48. In sum, we are convinced from the record before us and the applicable law that the percentage of disqualified votes was not substantial enough to warrant a special election; that there were not enough illegal votes cast for Tisdale which would change the result of the election; and that there was not a sufficient number of votes which were disqualified so as to cause the will of the voters to be impossible to discern.

## CONCLUSION

¶49. For the foregoing reasons, the judgment of dismissal entered by the Circuit Court of Kemper County is affirmed.

¶50. **AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., GRAVES, DICKINSON AND RADOLPH, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**