# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-EC-00427-SCT

*WAYNE SELF*

*v.*

*ERIC MITCHELL*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/30/2020 |
| TRIAL JUDGE: | HON. JEFF WEILL, SR. |
| TRIAL COURT ATTORNEYS: | MARGARETTE LAFAYE MEEKS |
| | WILLIE GRIFFIN |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MARGARETTE LAFAYE MEEKS |
| ATTORNEY FOR APPELLEE: | WILLIE GRIFFIN |
| NATURE OF THE CASE: | CIVIL - ELECTION CONTEST |
| DISPOSITION: | AFFIRMED - 10/21/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KING, P.J., COLEMAN AND BEAM, JJ.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1.     Wayne Self lost the election for Leflore County District 4 Supervisor on November 5, 2019.  He subsequently petitioned the circuit court to contest the election, alleging numerous violations of Mississippi election law relating to absentee ballots and the results of a voting machine in the Rising Sun Precinct.  Self contends that he received a majority of the legal votes cast, or, in the alternative, that a new election should be ordered.  After a hearing on the matter, special judge Jeff Weill found that Self's proposed remedy to invalidate the absentee ballots and the results of a voting machine were not supported by the evidence.  Aggrieved, Self now appeals to this Court.

## FACTS AND PROCEDURAL HISTORY

¶2. The Leflore County Election Commission certified the results of the November 5, 2019 general election, naming Eric Mitchell as the winner for District 4 Supervisor against Wayne Self. Self subsequently petitioned the circuit court to request a new election, alleging various violations of the Mississippi Election Code, including the handling of absentee ballots and the counting of electronic votes on a voting machine in the Rising Sun Precinct.

¶3. This Court appointed the Honorable Jeff Weill as special circuit judge to preside over the case. Self filed six separate motions for summary judgment, and Mitchell filed one. The case was set for a joint motion hearing and trial on the merits on February 25, 2020. The court denied Self's summary-judgment motions 4-6 and took under advisement Self's summary-judgment motions 1-3 and Mitchell's motion for summary judgment.

¶4. The court concluded that

> Of the approximately 167 absentee ballots cast in this election, 62 or 63 were challenged by the petitioner for various reasons. Many were disallowed. These ballots were voted, however, and irredeemably and totally mixed in with the valid ballots. We do not know who these illegal ballots were cast for. Given that the total absentee ballots in this election were a relatively small 10.8 percent of the total votes cast, and that there has been virtually no proof that electronic voting machine count on election day was inaccurate, a sensible remedy is the remedy approved by the Mississippi Supreme Court in ***Harpole v. Kemper County Democratic Executive Committee***, 908 So. 2d 129 (Miss. 2005).

¶5. After reviewing the absentee votes and invalidating 167 absentee ballots, the court's judgment for the final vote tally was 707 votes for Mitchell and 680 votes for Self. The court held a new election was not warranted. From this judgment, Self appeals, arguing that the

trial court erred by not excluding the electronic votes in the Rising Sun Precinct on an unregistered voting machine.

## DISCUSSION

**Whether the trial court erred by not excluding the electronic votes in the Rising Sun Precinct on an unregistered voting machine.**

¶6.     The results from the memory card for voting machine ID 1, serial number 239836, assigned to the Rising Sun Precinct are in question because the voting machine malfunctioned when attempting to retrieve the final count tape. The results tape matches a different serial number than the original voting machine. As a result, Self contends that the votes were illegal and should be declared void.

¶7.     Mitchell contends that there is no genuine issue of material fact that Self did not receive a majority of the legal votes cast on the electronic voting machine and that those votes are valid.

¶8.     In granting Mitchell summary judgment, the court held, "that there has been virtually no proof that the electronic voting machine count on election day was inaccurate."

¶9.     Now, this Court must decide whether summary judgment was appropriate.

> "[T]his Court applies a de novo standard of review to a circuit court's grant or denial of summary judgment." *Indemnity Ins. Co. of N. Am. v. Guidant Mut. Ins. Co.*, 99 So. 3d 142, 149 (Miss. 2012). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c); *see also Indemnity Ins. Co. of N. Am.*, 99 So. 3d at 149. In assessing summary judgment, "the evidence must be viewed in the light most favorable to the party against whom the motion has been made." *Kilhullen v. Kansas City S. Ry.*, 8 So. 3d 168, 174 (Miss. 2009) (citing *Daniels v. GNB, Inc.*, 629 So. 2d 595, 599 (Miss. 1993)).

*Wesley v. Washington Cnty. Democratic Exec. Comm.*, 235 So. 3d 1379, 1382 (Miss. 2017).

¶10.    Self alleges that the voting machine in question had enough illegal votes to change the results of the election with seventy-four votes for Mitchell and thirty-eight votes for Self. Because the voting machine did not shut down properly and because testimony was conflicting on the appropriate number on the machine when the tape was inserted to get the results, Self contends that the court could recognize an inference of fraud like in *Rogers v. Holder*, 636 So. 2d 645, 652 (Miss. 1994), and conduct a special election.

¶11.    The *Rogers* Court upheld the special tribunal's decision to hold a special election because a small number of "votes were cast in violation of the mandatory provisions of the Absentee Balloting Procedures Law and the violations were willful and attended by a reasonable inference of fraud." *Id.* at 651-52. When looking at whether or not to throw out illegal votes, the court has used a specific test, which "essentially provides that special elections will be required only when (1) enough illegal votes were cast for the contestee to change the result of the election, or (2) so many votes are disqualified that the will of the voters is impossible to discern." *Noxubee Cnty. Democratic Exec. Comm. v. Russell*, 443 So. 2d 1191, 1197 (Miss. 1983) (citing *Walker v. Smith*, 213 Miss. 255, 56 So. 2d 84 (1952)).

¶12.    Three voting machines were assigned for use at the Rising Sun Precinct. The zero tapes and results tapes for two of the three matched. The zero tape and results tape for the third machine, however, did not match.

4

¶13. When the election was over, election manager Joyce Potlow-White attempted to retrieve the closing tape as she had done with the other two voting machines, but she was unable to do so. White then contacted the circuit clerk, Eric Stockstill, for further instructions.

¶14. Stockstill directed White to bring the machine and memory card from the precinct to the election central at the Leflore County Courthouse so the technician could upload the information onto another machine. The memory card was given to the technician, who uploaded the information to the second machine and downloaded the votes onto a closing tape. The zero tape for voting machine 239836 was generated and made available; however, serial number 297198 was used in the certification of the election results.

¶15. Testimony was heard from several witnesses, including the Leflore County Circuit Clerk and two of his deputies, poll managers, and two county election-commission members. According to Stockstill, the votes generated from the new tape accurately represented the votes cast at the Rising Sun Precinct on election day. Stockstill testified that a different serial number existed because the serial number of the machine in which the memory card is inserted was printed on the results tape.

¶16. Election Commissioner Preston Ratliff also testified that he was present when the technician uploaded the memory card and that he was satisfied that the results generated by the technician at the courthouse were the results from the machine that day. However, Ratliff testified that the results tape printed from a memory card inserted into another machine

would reflect the serial number of the original voting machine to which the memory card was programmed.

¶17. Self's sole issue lies with the conflicting testimony of the election officials regarding the results tape. Self cites **Wesley** for the limited proposition that "the law unquestionably requires that local officials handle ballot box material with great care" and that "[t]he need for care also extends to votes cast on electronic voting equipment." **Wesley**, 235 So. 3d at 1383.

¶18. Yet here, as in **Wesley**, no evidence was adduced at trial that the election officials failed to handle "the votes cast on electronic voting equipment" with "great care." **Id.** The uncontradicted testimony was that Machine 239836 was used as a voting machine during the general election. The machine operated properly during the election.

¶19. The court found that

> the clerk and his two deputies both unhesitatingly testified that, as was common on election day, a machine failed to function. The technician retrieved the machine's electronic card and sensibly used it to print off a final total using another machine. No one . . . was suspicious or dissatisfied by this process and all testified that the electronic voting machine process went smoothly.

¶20. Moreover, the circuit clerk testified that he is the custodian of these machines. The machines come to him, not to the election commissioner. He assigns the machines out to the election commission to conduct the election. The testimony of the clerk and election commissioner were that votes retrieved from the memory card on another machine were the true results of the voting machine at the Rising Sun Precinct, so the claim of ballot-box

6

security did not result in any votes being lost by Self. Self's own witnesses said that the process was above-board.

¶21. In the absence of fraud or intentional wrongdoing or some extreme, radical departure by election officials, technical violations of law will not vitiate an election. *Campbell v. Whittington*, 733 So. 2d 820, 826 (Miss. 1999) (citing *Wilbourn v. Hobson*, 608 So. 2d 1187, 1192 (Miss. 1992)).

¶22. Self failed to prove that (1) enough illegal votes were cast for Mitchell to change the results or place the results in doubt or (2) that so many votes are disqualified that the will of the voters cannot be ascertained. *Russell*, 443 So. 2d at 1197.

¶23. The court found that "[Self's] suggested remedy to invalidate not only the absentee ballots but also the electronic voting machine votes from the Rising Sun Precinct is not supported by the testimony or the evidence." The votes invalidated by the court was 10.8 percent which is less than 30 percent of the total votes cast, so unless fraud, intentional wrongdoing or some other departure from the procedures was present, Self was not entitled to a new election. *Harpole*, 908 So. 2d at 147.

## CONCLUSION

¶24. We affirm the trial court's grant of summary judgment in favor of Mitchell.

¶25. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**

7